RALSTON PURINA COMPANY *vs.* ZONING BOARD OF TOWN OF WESTERLY.

MARCH 6, 1940.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

BAKER, J. This is a petition for a writ of *certiorari* brought under the provisions of public laws 1925, chapter 746, sec. 2, by the petitioner as a person aggrieved by a decision of the zoning board of the town of Westerly. The petitioner seeks to have us review a certain decision and record of that board, by which decision the petitioner was refused a building permit to erect a coalpocket in said town. The writ was issued and directed to the board, which has duly certified to us the decision and record in question.

From such record it appears that the petitioner, a Missouri corporation, on April 5, 1939, filed with the building inspector of the town of Westerly an application for a permit to build, in that town, a coalbin or pocket, at an estimated cost of $950, on property located on a highway known as Industrial Drive. Thereafter, on that same date, the building inspector, upon whom, under the provisions of section 22 of the zoning ordinance of Westerly, is imposed the duty of enforcing such ordinance under the rules and regulations of the zoning board, referred the petitioner's

application to such board, which met that evening and voted that said application be advertised for a public hearing. The matter thereafter finally came before the board on April 26. At that time it voted to deny the petitioner's application for the reason that, in the opinion of the board, the erection of the bin "would be detrimental to the public health and welfare of the community."

It is first urged by those supporting the board's decision that the petitioner, being merely the lessee of the premises upon which the proposed coalbin is to be erected, cannot alone, without joining the owners of such property, apply for the building permit in question, or bring the instant petition. We find nothing in the Westerly zoning ordinance, or in the enabling acts authorizing its enactment, which specifically or by implication denies the petitioner the right to file such an application without joining the owners of the property in question. In our judgment, the petitioner has a sufficient interest in the leased premises to permit it alone to apply for the building permit in question. No objection to such application was made before the board or is made now by the owners of the property. Under the circumstances the petitioner is a proper person to bring the present petition.

The record before us discloses, and it is not disputed, that the property, upon which it is sought to locate the coalbin involved herein, was situated, at the time the instant application was filed and denied, in what was then designated, under the zoning ordinance and map, as an industrial district. An examination of the ordinance shows that in such a district a use permitted in a residence, business, or commercial district was authorized. It also appears from the ordinance that "Coal, coke or wood yard" was a permitted or authorized use in a commercial district. The petitioner contends, therefore, that no hearing of any kind was necessary upon its application for the building permit in question, and that it should have been granted forthwith.

The zoning board, however, in support of its holding that, under the circumstances, a hearing on the application was necessary and that it was proper that evidence be submitted on the issues raised, calls attention to a portion of the zoning ordinance relating to uses in an industrial district, which portion reads as follows: "B.—Special Permit Uses. In an industrial district no building or premises shall be used, and no building shall be erected or structurally altered which is arranged, intended or designed to be used, for any of the following uses, except on special permit as provided in paragraph (1) of subdivision B of section 23." Among the "following uses" above referred to, the final one, which is numbered 16, is as follows: "Any industrial process emitting dust, odor, gas, fumes, noise or vibration comparable in character, or in aggregate amount to that of any use specified in paragraphs 1 to 15 inclusive of this subdivision."

Subdivision B of section 23, above mentioned, deals with the authority of the zoning board to grant special exceptions under certain specified conditions and circumstances, and "paragraph (1)" gives such board authority to permit the location of a special permit use, as hereinbefore set out, in any part of an industrial district.

The board took the position that the coal business, which the petitioner intended to conduct on the premises involved, by means of the coalbin or pocket it desired to erect, constituted an "industrial process" within the meaning of the term as used in paragraph 16, *supra*. The board, therefore, received evidence on behalf of certain objectors, who owned property in the immediate neighborhood of the proposed location of such coalbin, and also conducted on such property businesses requiring a high degree of cleanliness and purity of air, to the general effect that a coalyard and coalpocket emitted large quantities of dust; that the said businesses would be injuriously affected thereby; and that the community as a whole would suffer a detriment if the petitioner was permitted to operate a coal business at the

location in question. On the other hand, the petitioner maintained that a coal business was not an "industrial process", as such term was used in the zoning ordinance as above set out, and that the application for the building permit in question was not governed by the provisions of such ordinance relating to special permit uses in an industrial district.

Upon consideration, we are of the opinion that the petitioner's view is correct. No case has come to our attention in which the term "industrial process", as used in a zoning ordinance, has been passed upon or defined by a court of last resort. However, in Webster's New International Dictionary (2d ed.) page 1972, the following definitions of the word "process", the noun, are found: "2. A course of procedure; something that occurs in a series of actions or events. 4.b. A series of actions, motions, or operations definitely conducing to an end, whether voluntary or involuntary; ... a method of operation or treatment, esp. in manufacture; ... Syn.- ... Process denotes a progressive action or a series of acts or steps esp. in the regular course of performing, producing, or making something . . . ."

In discussing questions relating to patents in connection with the manufacture of flour the court in *Cochrane* v. *Deener*, 94 U. S. 780, at page 788, defines "process" in the following language: "A process is a mode of treatment of certain materials to produce a given result. It is an act, or a series of acts, performed upon the subject-matter to be transformed and reduced to a different state or thing." In *Moore* v. *Farmers Mutual Mfg. & Ginning Co.*, 51 Ariz. 378, 77 Pac. (2d) 209 and in *Bedford* v. *Colorado Fuel & Iron Corp.*, 102 Colo. 538, 81 Pac. (2d) 752, both cases involving tax questions, generally similar definitions of "process" and "processing" are found.

In view of the generally accepted meaning of the term "process", as above referred to, the use of the words "indus-

trial process" in the ordinance before us should not be confused with the words "industrial pursuits", as used in cases cited to us by an objector. See *Wells, Fargo & Co.* v. *Northern Pacific Ry. Co.*, 23 Fed. 469. The meaning of the word "process" as above defined is not altered by the use in the instant zoning ordinance of the qualifying word "industrial". We are of the opinion that the coal business to be conducted by the petitioner on the premises in question in the manner appearing in the record, namely, by means of a bin or pocket into which coal is to be dumped from railway cars standing upon a siding, does not constitute an "industrial process" within the meaning of that term as used in the zoning ordinance. There is nothing in the present record to indicate that coal after delivery on such premises is to be treated in any manner that will change or affect the nature, character, or form of the coal. From such record it appears that the use of the coalpocket in question is to be in connection with the carrying on of an ordinary commercial business.

We find, therefore, that the zoning board of Westerly was in error in holding that the petitioner's application for the building permit in question was governed by paragraph 16, *supra,* as involving a use which required a special permit, if such use was to be allowed in an industrial district; and in holding that it, the board, for that reason, had the right in its discretion to deny such permit. In our judgment, at the time the petitioner's application was filed and denied, the provisions of the zoning ordinance relating to "industrial process" had no bearing upon such application; and the coalyard which the petitioner contemplated conducting on the property occupied by it was, under the then-existing terms of the ordinance, an authorized use in the district in which the property was situated.

It is, however, further argued, in support of the board's decision, that there was a sound discretion vested in the board, in the interest of the public health and the general

welfare, to grant or deny the petitioner's application, and that, after weighing carefully all the facts and circumstances appearing before it, the board came to a decision which cannot be considered arbitrary or unreasonable. In our opinion the board has no such general discretionary power as is here claimed.

The enabling acts, P. L. 1922, chap. 2299, as amended by P. L. 1925, chap. 746, authorized the town council of Westerly to enact a zoning ordinance for the purpose of promoting the health, safety, morals or the general welfare of that community. The town council passed the ordinance now under consideration and presumably, in establishing districts, uses, areas, exceptions and other like matters, exercised the discretion vested in it by the enabling acts so as to carry out the purpose expressed therein. The zoning board, however, is merely a body appointed by the town council, under the provisions of the enabling acts and of the ordinance, to assist in administering such ordinance.

All the powers of such board are derived from the enabling acts and the ordinance and must be found therein. An examination of such acts and of the ordinance shows that only in passing upon exceptions to and variations from the provisions of the ordinance, including the matter of special permits, is the board given any such discretion as is now urged on its behalf. Since the application now under consideration does not involve any such exception or variation, we are of the opinion that the board's decision cannot be upheld on that ground.

It was argued to us that, after the instant petition was filed in this court, but before it was heard, the zoning ordinance of Westerly was duly amended in such a manner as to prevent the petitioner from hereafter conducting a coalyard at the location involved herein, and that, therefore, we should deny and dismiss such petition. That matter is not in the record which has been certified to this court pursuant

to the mandate of the present writ. In our judgment the only question now before us is the correctness of the decision made upon such record.

For the reasons above indicated, we are of the opinion that the action and decision of the zoning board was in excess of its jurisdiction under the ordinance, according to the record before us; that, under the circumstances appearing, its decision was erroneous, and, therefore, that such action and decision, being illegal, should be reversed.

The decision in question of the zoning board of Westerly is hereby reversed, and it is ordered that a copy of this opinion be transmitted to the board.

*Clarence E. Roche,* for petitioner.

*Herbert W. Rathbun,* Town Solicitor, for respondents.

*John J. Dunn, Charles E. Tilley, Eugene J. Phillips, Swan, Keeney & Smith,* for objector.