WILLIAM C. BOWEN, CHARLES A. BOWEN, HELEN M. EUSEY
AND MERCHANTS NATIONAL BANK & TRUST COMPANY OF IN-
DIANAPOLIS, AS ADMINISTRATOR, C.T.A., D/B/N OF THE ESTATE
OF CORNELIUS M. BOWEN *v.* METROPOLITAN BOARD OF ZONING
APPEALS IN MARION COUNTY, DIVISION III, JAMES R. NICKELS
AND BURGER CHEF SYSTEMS, INC.

[No. 2-1272A132. Filed September 19, 1974. Rehearing denied
November 4, 1974. Transfer denied April 15, 1977.]

*Ted B. Lewis, Terence L. Eads, Stewart, Irwin, Gilliom,
Fuller & Meyer,* of Indianapolis, for appellants.

*David F. Rees,* of Indianapolis, *James A. Buck, Buck, Berry,
Landau & Breunig,* of Indianapolis, for appellees.

WHITE, J.—The Board of Zoning Appeals (Board) granted a variance of use to appellee Burger Chef Systems, Inc. (Lessee) over the objection of appellants (Lessors) Bowen, Bowen, Eusey, and "certain minors", who are heirs of Cornelius M. Bowen, deceased, who ten years earlier had demised the land to Lessee for a term of ninety-nine years. Lessors' objection was that their consent as "owners" was necessary to give the Board jurisdiction to hear and determine the petition for the variance and that since they had not given it the Board had no jurisdiction. At no time have they objected or remonstrated on the ground that the use permitted by the variance would be injurious to their reversionary interest in the land, or in adjoining land, or that it would be injurious to the public interest.

Lessors petitioned the Superior Court for review of the Board's decision pursuant to the writ of certiorari procedure provided in the Metropolitan Plan Commission Act applicable to Marion County, specifically Ind. Ann. Stat. §§ 53-974 through 53-980 (Burns 1964 Repl., 1974 Supp.). The writ was granted, the Board made its return, counsel for Lessors and for Lessee filed briefs and made oral argument, but the court heard no testimony and received no "evidence" other than the Board's return. Therefore, *if the court followed the statute* (§ 53-979), it made "its determination and render[ed] its judgment with reference to the legality of the decision of the board of zoning appeals *on the facts set out in the return* to the writ of certiorari", but as we shall see that was impossible because no finding of such facts was set out in the return. We therefore reverse with directions to the Superior Court to remand the case to the Board with directions to make special findings of fact on the issue raised by Lessors' objections and for further proceedings thereafter not inconsistent with this opinion. *Easley* v. *Metropolitan Board of Zoning Appeals* (1974), 161 Ind. App. 501, 317 N.E. 2d 185, 43 Ind. Dec. 678; *Department of Financial Institu-*

*tions of Indiana* v. *State Bank of Lizton* (1969), 253 Ind. 172, 252 N.E.2d 248.

Not only did the Board fail to state the facts on which it based its decision, but many of the facts argued orally and in the briefs cannot be found in any of the "evidence" in the record. Our statements of "fact" are therefore merely recitals of what we understand the parties believe to be the facts (unless otherwise indicated).

Ten years before this matter came before the Board, Cornelius Bowen, now deceased, was the sole holder of the fee simple title to a tract of land on the north side of East Eighty-sixth Street in the Nora area of northern Marion County. He demised it to appellee Burger Chef Systems, Inc. (Lessee) by a written lease for a term of ninety-nine years. Lessee is in possession of the leased premises and is operating a drive-in restaurant on part of the demised land while some of it north of the restaurant is vacant. On that unused land Lessee wishes to construct and operate a miniature golf course, but the zoning classification, although commercial, does not permit that use. Lessee, therefore, has filed a petition for a variance. The petition is typed on a form which gives the appearance of being the Board's required official form. The first line filled in thereon reads:

"Name of Petitioner(s) BURGER CHEF SYSTEMS, INC."
"(Owner(s) of Property)"

Attached to the petition is a sheet which reads:

*"CONSENT*

"The undersigned, being the Lessee of a certain Land Lease on the property described on the attached Exhibit 'A', do hereby consent to the filing of a variance or rezoning petition in connection with such real estate by ———————.

"Dated this 14th day of April, 1971.

"BURGER CHEF SYSTEMS, INC.

BY: S. H. Price

—————————————————————

S. H. Price, Exec. Vice Pres."

Lessors' "objection" was in the form of an unverified, written motion signed by an attorney at law on behalf of "WILLIAM C. BOWEN, CHARLES A. BOWEN and HELEN M. BOWEN, *and certain minors,*[1] all heirs of CORNELIUS M. BOWEN, Deceased" (our emphasis), which requested, *inter alia,* that the Board "dismiss the request for lack of jurisdiction" for these reasons:

"1. That the aforesaid petitioners are the owners of the real estate which is the subject matter of this request for variance.

"2. That the petition for variance, filed with the Metropolitan Board of Zoning Appeals of Marion County, is signed by JAMES R. NICKELS, with the consent of BURGER CHEF SYSTEMS, INC., as lessee.

"3. That the aforesaid owners of said real estate have not consented in writing or otherwise, and do not consent to said request for variance.

"4. That without the consent of the aforesaid owners, said petition for variance is a mere notice of intention to petition for variance and is of no force or effect, is not properly before this Board for hearing and this Board does not have jurisdiction to hear or act upon same."

It appears from the shorthand reporter's transcript of the Board's hearing that "all those who wish to speak in this case" were asked to "remain standing and be sworn" and that "all witnesses" were sworn. We assume (with little or no basis *in the record* for so doing) that among those sworn as witnesses were the attorneys for the parties, since all the "facts" in the record relative to Lessors' motion to dismiss come from their mouths during their argument which was preceded by the Chairman's statement that "[w]e have been advised by our legal counsel we would like to hear both sides first, to settle your first argument."

---

1. The only further reference to "certain minors" as heirs of the deceased original lessor is in Lessors' attorney's argument before the Board when he said, "I represent the heirs of Cornelius Bowen, the original owner of the Burger Chef land. Mr. Bowen died, leaving three adult children and ten grandchildren. He was the parent of these adult sons and daughters. * * * The owners of this real estate are three adult children of Cornelius Bowen and their representative children." No one has raised any question of defect of parties.

Lessors' attorney's argument and/or testimony before the Board was simply that the Board's rules require "owners" to sign variance petitions or to give their consent; that Lessors are the owners and Lessees are not, and cannot be, "owners". Lessors have not signed or consented to the petition and the Board therefore has no jurisdiction. Lessee's attorney read parts of what he said was Paragraph 7 of the lease and contended that it gave consent to Lessees to apply for this variance. Lessors' attorney acknowledged that Lessee's attorney had correctly read from the lease but argued that it applied only to putting the drive-in restaurant on the property. A board member asked, "[w]hat does the original[2] lease call for in terms of land use?" The answer, from Lessee's attorney was: "That provision I read to you—'you will proceed to have the premises for a drive-in restaurant and other commercial purposes . . .'."

That is the substance of all the "evidence" before the Board (on this issue) insofar as is disclosed by the Board's return. And, as previously noted, no additional evidence was introduced in the Superior Court. Nevertheless, the parties have argued in their briefs before the Superior Court and in both their briefs and their oral arguments here many "facts" which are not in evidence and are not facts of which either court can take judicial notice. The two principle sources to which those facts *de hors* the record are attributed are (1) the rules of the Board and (2) the ninety-nine year lease.

The parties probably assume that all courts take judicial notice of rules of administrative agencies. That is true only as to State administrative agencies and then only by reason of Ind. Ann. Stat. § 4-22-2-1 *et seq.* (Burns Code Ed., 1973). *State ex rel.* v. *Wheaton* (1923), 193 Ind. 30, 34, 138 N.E. 820; *Buckinghouse* v. *Gregg* (1862), 19 Ind. 401; *Terre Haute Paper Co.* v. *Price* (1943), 113 Ind. App. 578, 584, 47 N.E.2d 166.

---

2. There is no other indication that there was ever more than one lease.

On what theory the parties have assumed that this court, the *certiorari* court, and the Board could consider the provisions of the lease when it is not in evidence, we are unable to surmise and think it safe to say there is none.

Although we must rule that the Superior Court erred in reviewing the Board's decision in the absence of findings of fact by the Board specific enough to permit intelligent review, and must reverse and remand for the reasons we so recently stated in *Easley* v. *Metropolitan Board of Zoning Appeals* (1974), 161 Ind. App. 501, 317 N.E.2d 185, 43 Ind. Dec. 678, we are nevertheless willing to state our views of the law in the abstract, and in relation to hypothetical facts, in the hope that a further appeal will thereby be rendered unnecessary.

The Indiana statutes which authorize boards of zoning appeals to grant variances make no mention of who may request a variance.[3] However, it has been held that "this State's rules of standing (Burns Indiana Statutes Anno. [1967 Repl.], § 2-201 *et seq.*) *are applicable* to administrative proceedings" and that persons without such standing cannot become parties to administrative proceedings. *The Insurance Commissioners of Indiana* v. *Mutual Medical Insurance, Inc.* (1968), 251 Ind. 296, 301, 241 N.E.2d 56; *Bucur* v. *Inland Steel Company* (1927), 86 Ind. App. 684, 158 N.E. 526. § 2-201 and Trial Rule 17(A), Indiana Rules of Procedure, which has replaced it, both require that: "Every action shall be prosecuted in the name of the real party in interest." It therefore follows that notwithstanding the variance statute's silence, an applicant for a variance must be one who has such an interest that he can qualify as the real party in interest. In other words, his pursuit of a variance must be in his own interest and not in the interest of another, to qualify him as the real party in interest. And, of course,

3. Ind. Ann. Stat. §§ 53-968 and 53-778 (Burns 1964 Repl. and 1974 Supp.).

that interest of his own must be a sufficient interest to give him standing.[4]

*John A. Boyd Motor Co.* v. *Claffey* (1929), 94 Ind. App. 492, 496, 165 N.E. 255, 256, cites twelve Indiana cases in support of its statement to the effect that the real party in interest is "the party entitled to the fruits of the action". The annotator of Ind. Ann. Stat. § 2-201 (Burns 1967 Repl.) cites ten cases which, without using his words, support his conclusions that "[w]hoever is entitled to receive the benefits of the suit is the real party in interest, and should institute the suit."

A lessee in possession of real estate under a lease with an unexpired term of eighty-nine years would be "entitled to

---

4. "Standing", or "standing to sue", is a term not often used in Indiana opinions, but frequently found in federal practice. There it is properly used to denote a principle not always identical to the "real party in interest" principle. See 6 Wright and Miller, FEDERAL PRACTICE & PROCEDURE, § 1542. As there stated, "the real party in interest principle is a means to identify the person who possesses the right sought to be enforced." (Id. at p. 639.) After noting that "[i]n the realm of public law . . . the question whether the challenger [of government action] is a proper party plaintiff" is usually analyzed in terms of the "judge made doctrine of standing to sue", that authority notes that: "To the extent that standing in this context is understood to mean that the litigant actually must be injured by the governmental action that he is assailing, then it closely resembles the notion of real party in interest under Rule 17(a) inasmuch as both terms are used to designate a plaintiff who has shown that he possesses a sufficient interest in the action to entitle him to be heard on the merits." (Id. at p. 641.)

It is in that sense that *The Insurance Commissioners* opinion (*supra*), referred to the real party in interest statutes as rules of standing.

An application for a land use variance must be premised upon the contention that the strict application of the zoning ordinance to the property for which the variance is sought constitutes a hardship (IC 1971, 18-7-2-71, Ind. Ann. Stat. § 53-969). In effect, therefore, the applicant is challenging prospective governmental action which will injure whoever holds the private right (but for the zoning ordinance) to subject the land to the use of the variance. In the simple case there is but one person who will suffer that "hardship", or injury: the owner of the fee. If anyone else applies for the variance he is not a real party in interest, unless he is the authorized representative of the feeholder and some statute or rule permits such representation.

But if the feeholder has put a lessee into unrestricted use possession under a long term lease, the case is not that simple because it then appears that for the next many years (perhaps eighty-nine) the lessee may be the only person who will suffer the hardship (if any) if the variance is denied, or conversely, the lessee may be the only person who can benefit by the grant of the variance. In such a case there is no impropriety in saying that only a real party in interest has standing to apply for a variance and to determine standing by the same standards courts use to determine whether a plaintiff is the real party in interest.

receive the benefits of" his petition for a variance, provided the lease contains nothing to prohibit his use of the property in the manner the variance would permit. Conversely, it would appear the lessor's interest in obtaining the variance would be quite remote, unless the lease provisions concerning rent were such that it might be greater if the variance were granted.

While Indiana has had no previous occasion to consider whether an applicant for a variance had standing to make the application there are several cases from other jurisdictions which have spoken to the subject. See Anno., 89 A.L.R. 2d 664; 2 Yokley, ZONING LAW AND PRACTICE (3rd Ed., 1965 and 1973 Supp.) 74, § 13-5. There appears to be general accord that an applicant must show *ownership* of some legally definable interest in the property to give him standing, but few cases have held the applicant must be the holder of the fee simple title. Tenancy at will,[5] a mere option to purchase[6] and a contract to buy conditioned on the grant of the variance[7] have all been held insufficient interests to give an applicant the necessary standing, although some cases have held the conditional vendee's interest sufficient.[8] Lessees under written leases for a term of years (not mere tenants at will) have generally been held to have sufficient interest.[9] In no case we have found has the owner of the fee opposed the grant of the variance or challenged the right or standing of applicant. In many of the

5. *City of Little Rock* v. *Goodman* (1953), 222 Ark. 350, 260 S.W.2d 450, 452.

6. *Tripp* v. *Zoning Board of Review* (1956), 84 R.I. 262, 123 A. 2d 144; *Parise* v. *Zoning Board of Review* (1961), 92 R.I. 338, 168 A. 2d 476; *Lee* v. *Board of Adjustment* (1946), 226 N.C. 107, 37 S.E. 2d 128, 168 A.L.R. 1.

7. *Minney* v. *Azusa* (1958), 164 Cal. App. 2d 12, 330 P. 2d 255, app. dismd. 359 U.S. 436, 3 L. Ed. 2d 932, 79 S.Ct. 941.

8. *Arant* v. *Board of Adjustment* (1960), 271 Ala. 600, 126 So. 2d 100, 89 A.L.R. 2d 652.

9. *Finn* v. *Municipal Council of Clifton* (1947), 136 N.J.L. 34, 53 A. 2d 790; *Richman* v. *Philadelphia Zoning Board of Adjustment* (1958), 391 Pa. 254, 137 A. 2d 280; *Ralston Purina Co.* v. *Zoning Board of Westerly* (1940), 64 R.I. 197, 12 A. 2d 219.

cases the fee owner has joined with applicant. The rationale of some of the contract purchaser and lessee cases is that the contract or lease has the effect of making the applicant the agent of the fee owner.[10] In short, there is no precise precedent for what seems to be the case at bar.

We doubt that anyone would question the Board's right, perhaps duty, to guard against speculative, frivolous, or deviously motivated variance requests by applicants who own no interest in the land for which the variance is sought. The Board's rule-making power[11] can certainly be utilized to aid it in accomplishing that end. One obvious means to that end is to require that all applications be made on forms prescribed and furnished by the Board. That form could require the applicant to state specifically what his legal or equitable interest is. It could further require that if petitioner's interest is less than the whole interest, the names and addresses of the holders of all other interests (stating their interests) must be shown. Attached waivers and/or consents of those other owners, or proofs of notice to them, should also be required.

A less satisfactory means to that end is to require that all petitions be on forms furnished by the Board and for such forms to require that the owner or owners of the property be the petitioner and that the owner or owners sign the petition.

If the Board had such a rule and if it were before us for interpretation[12] we would say that, when read with the form furnished, it *does* require that a petition for a variance be signed by an "owner". We see no other way to read it and

10. *Slater* v. *Toohill* (1949), 276 App. Div. 850, 93 N.Y.S. 2d 153; *Richman* v. *Philadelphia Zoning Board of Adjustment, supra* (n. 8.).

11. See Ind. Ann. Stat. §§ 53-777 and 53-967 (Burns 1964 Repl. and 1974 Supp.).

12. As previously noted, the rules are not in the evidence nor in any finding of the Board or court and are not a matter of which we can take judicial notice. However, the appendix to appellants' brief contains what purports to be a copy of the Board's complete rules. It is that copy that we here speak of hypothetically.

the *furnished* form together and give effect to the wording of both. But *for the purpose of that rule* we cannot subscribe to Lessors' narrow definition of *"owner"* as including only owners of the fee.

Indiana's mechanic's lien statute is an example of the fact that "owner" can be used to mean the holder of an interest in real estate of lower rank than the fee. Ind. Ann. Stat. § 32-8-3-2 (Burns Code Ed., 1973) which is section 2 of that law, says, ". . . and where the *owner* has only a leasehold interest . . . ." (Our emphasis.) In *Fletcher Avenue Savings and Loan Association* v. *Roberts* (1934), 99 Ind. App. 391, 396, 188 N.E. 794, the court said, "There is nothing in our mechanic's lien statutes which indicates that the word 'owner' was used in a narrow sense, meaning only owner of the fee . . . ." Likewise, we find nothing in the purported rules of the Board, and/or in the petition form apparently furnished pursuant thereto, which indicates that the word "owner" on that form was used in the narrow sense of *only* owner of the fee. We believe the only reasonable sense in which "owner" could be said to be used on that form is in the sense of "owner of the right (but for the Zoning Ordinance) to use the property" in the manner which the petition requests.[13]

If, as Lessee contends, the lease grants to it the exclusive possession of the land in question, with no express restriction as to any commercial use, for an unexpired term of eighty-nine years, it follows that for such eighty-nine year term Lessors would have no right at all to use the land for any purpose (unless by some default Lessee forfeited its Leasehold). To say then that Lessors, and not Lessee, were, during

---

13. 30A WORDS AND PHRASES 462-470 abstracts some twenty-eight cases (none from Indiana) in which "owner" was held to mean lessee and some seventeen in which the opposite was held (as well as several other cases not involving real estate or in which the holding is not readily apparent). None of those cases appear to be zoning cases. Most which hold a lessee to be an "owner" within the meaning of a particular statute involve either mechanic's lien statutes or condemnation statutes.

all that time the "owners" for the purpose of requesting a variance of use, (and therefore *essential* parties to such request), is to risk rendering the rule unconstitutional under Article I, sections 12 and 21, Constitution of Indiana. *Bituminous Casualty Corp.* v. *Dowling* (1941), 111 Ind. App. 256, 263, 37 N.E.2d 684; *Mogilner* v. *Metropolitan Plan Commission* (1957), 236 Ind. 298, 314, 140 N.E.2d 220. And when two interpretations are possible, that interpretation which renders the rule just and valid, fair and reasonable, should be adopted. *Pittsburgh, Cincinnati, Chicago & St. Louis Ry. Co.* v. *Backus, Treas.* (1893), 133 Ind. 625, 637, 33 N.E. 432.

The judgment is reversed and the cause is remanded to the court below with directions that it remand the cause to the Board with directions to conduct such further proceedings as it may deem necessary to enable it to make a special finding of fact and a decision on the issues raised by appellants' motion to dismiss, to make such finding and decision, and for such further proceedings thereafter as are consistent with the views herein expressed.

Reversed with directions.

Sullivan, P.J. and Buchanan, J., concur.

NOTE.—Reported at 317 N.E.2d 193.