[Civ. No. 51285. First Dist., Div. One. Feb. 15, 1983.]

SHELL OIL COMPANY et al., Plaintiffs and Appellants, v.
CITY AND COUNTY OF SAN FRANCISCO et al., Defendants and
Respondents.

COUNSEL

Fabris & Ring, Alvin J. Fabris and David D. Ring for Plaintiffs and Appellants.

George Agnost, City Attorney, Burk E. Delventhal and Alice Suet Yee Barkley, Deputy City Attorneys, for Defendants and Respondents.

OPINION

RACANELLI, P. J.—On appeal from a denial of mandate, we consider the dispositive issue whether a lessee under a written real property lease has standing to apply for a conditional use permit as an "owner" within the meaning of section 303, subdivision (b) of the San Francisco City Planning Code.[1] For the reasons discussed herein, we conclude that appellant-lessee is entitled to apply for the conditional use permit for consideration on its merits.[2]

The facts are relatively straightforward: Shell Oil has operated an automobile service station on the subject real property (the northeast corner of Fell and

---

[1] Subdivision (b) provides: "A conditional use action may be initiated by application of the owner, or authorized agent for the owner, of the property for which the conditional use is sought."

[2] Appellant David Zimmerman is the authorized sublessee of appellant Shell Oil. Since their interests appear identical, we will refer to both in the singular as either appellant or lessee.

Stanyan Streets in San Francisco) since 1917. In 1963, Shell Oil entered into a written 10-year lease agreement with the then owner, Mary West Cook. By amendment executed in 1968, the term of the lease was extended to September 30, 1988.

The service station is located in a district zoned for residential use, but has been allowed to operate as a lawful nonconforming use. In November 1968, Shell Oil applied for a conditional use permit to construct a replacement service station; the permit was granted by respondent planning commission for the period expiring May 2, 1980.

Subsequent to the lease amendment, Mary West Cook died, and title to the subject property was transferred to a successor testamentary trust.

On June 26, 1979, Shell Oil submitted the challenged application for a conditional use permit extending its nonconforming use for the unexpired portion of its leasehold term. Shell Oil advised the commission that the legal owner of the property did not support the application.

On August 8, 1979, respondent commission rejected the application as incomplete on the basis that the "owner" had not authorized the application as required by the local ordinance. Thereafter, Shell Oil instituted mandate proceedings seeking to compel the respondent commission to consider its application on its merits. Following an adverse determination, this appeal ensued.

I.

The narrow issue presented is whether a lessee in a tenancy for years qualifies as an "owner" within the meaning of the cited local ordinance. It has been long recognized that the descriptive term "owner" is subject to different meanings in varying contexts and is not limited to a strict definition of fee ownership. "The term 'owner' is generic and being of general application is therefore frequently applied to one having an interest in or claim upon property less than the absolute and unqualified title. (*Prudential Ins. Co.* v. *Kraschel,* 222 Iowa 128 [266 N.W. 550].) The term frequently depends for its signification upon the connection in which it is used and may concededly include one not holding the legal title. (*RCA Photophone, Inc.* v. *Huffman,* 5 Cal.App. (2d) 401 [42 Pac. (2d) 1059].) . . . [The] precise meaning of the word 'own' or 'owner', when not modified by other words indicating either qualified or absolute ownership, depends upon the subject-matter and the circumstances surrounding the subject-matter and the parties. (*RCA Photophone, Inc.* v. *Huffman, supra; Prudential Ins. Co.* v. *Kraschel, supra; Bare* v. *Cole,* 220 Iowa 338 [260 N.

W. 338].)" (*Pacific Coast etc. Bank* v. *Roberts* (1940) 16 Cal.2d 800, 805-806 [108 P.2d 439].)

California cases interpreting the generic term, in differing factual settings, are few in number. (See, e.g., *Pacific Coast etc. Bank* v. *Roberts, supra,* 16 Cal.2d 800 [mortgagee an owner within the meaning of redemption statutes except for purpose of emergency legislation extending time for redemption]; *Gray* v. *Board of Supervisors* (1957) 154 Cal.App.2d 700 [316 P.2d 678] [nonowner church eligible to apply for a use permit]; but cf. *Minney* v. *City of Azusa* (1958) 164 Cal.App.2d 12 [330 P.2d 255], app. dism., 359 U.S. 436 [3 L.Ed.2d 932, 79 S.Ct. 941] [purchase-option holder ineligible to apply for a zoning variance as an owner]; *Harbor Supply Co.* v. *Motor Boat Astorian* (1931) 116 Cal.App. 563 [2 P.2d 1004] [lessee of vessel not an owner within the meaning of an admiralty statute].) Accordingly, we consult the relevant decisions of other states.

Almost without exception, such courts have uniformly held that, in the context presented herein, a lessee qualifies as an owner with standing to apply for a zoning variance. (E.g., *West* v. *City of Astoria* (1974) 18 Ore.App. 212 [524 P.2d 1216, 1219] [lessee may apply for conditional use permit to operate center for disturbed children]; *Bowen* v. *Metropolitan Bd. of Zon. App. in Marion Cty.* (1974) 161 Ind.App. 522 [317 N.E.2d 193] [lessee eligible for variance to use vacant portion of land as miniature golf course]; *Richman* v. *Philadelphia Zoning Board of Adjustment* (1958) 47 N.J.Super. 472 [137 A.2d 280] [lessee may seek variance for use of building space]; *Finn* v. *Municipal Council of City of Clifton* (1946) 136 N.J.L. 34 [53 A.2d 790] [lessee could apply for permit to install gasoline tanks and operate a service station]; cf. *Marinelli* v. *Board of Appeal, etc.* (1931) 275 Mass. 169 [175 N.E. 479] [fuel company coal purchaser could apply for variance to operate coal hopper]; see also cases cited in Annot., 89 A.L.R.2d 663, 677-679; Annot., 61 A.L.R.3d 1128, 1134.)

Although most of these foreign cases involved either the landlord's joinder (*West* v. *City of Astoria, supra,* 524 P.2d at p. 1219; *Marinelli* v. *Board of Appeal of Bldg. Dept., supra,* 175 N.E. at p. 481) or the tenant's express authority under the lease to apply for necessary permits (*Richman* v. *Philadelphia Zoning Board of Adjustment, supra,* 137 A.2d 280; *Finn* v. *Municipal Council of Clifton, supra,* 53 A.2d 790), the underlying rationale is manifest: property ownership *in the context of a variance application by a lessee* must be construed to include ownership of the *right to use* the property in the manner requested in the application. Such practical construction was adopted by the Indiana court in upholding the standing of the lessee—over the lessor's objection—reasoning that it is the lessee, not the lessor, who has exclusive right of use during the term of the lease. (*Bowen* v. *Metropolitan Bd. of Zon. App. in Marion Cty., supra,* 317 N.E.2d 193, 199-200.)

We find the reasoning of *Bowen* persuasive, and we elect to follow the better line of authorities which it represents.[3] The subject lease expressly provides that the lessee has the right to use the property as a service station—and for no other purpose—for the term of the lease. In that context, Shell Oil is the owner of the exclusive right to use the property for such purpose and thereby is entitled to seek the necessary permit in order to carry out the agreed purpose of the lease. Accordingly, we conclude that Shell Oil has standing as an owner to apply for a conditional use permit.

Moreover, a contrary construction of the planning code provision would raise serious constitutional questions. (*Bowen* v. *Metropolitan Bd. of Zon. App. in Marion Cty.*, *supra*, 317 N.E.2d at p. 200.) In accordance with well settled rules of statutory interpretation, we must construe the subject provision in a manner preserving its constitutional validity. (*Department of Corrections* v. *Workers' Comp. Appeals Bd.* (1979) 23 Cal.3d 197, 207 [152 Cal.Rptr. 345, 589 P.2d 853]; *Bryant* v. *Swoap* (1975) 48 Cal.App.3d 431, 439-440 [121 Cal.Rptr. 867]; *D'Amico* v. *Board of Medical Examiners* (1970) 6 Cal.App.3d 716, 726 [112 Cal.Rptr. 786, 520 P.2d 10].)

## II.

Respondent contends that the petition for writ of mandate is defective in failing to join the lessor as a party.[4] We disagree. An indispensable party is one without whom a complete determination of the controversy cannot be had. (Code Civ. Proc., § 389.) Because Shell Oil, as lessee, qualifies as an owner of the property entitled to apply for a conditional use permit (see, e.g., *Bowen* v. *Metropolitan Bd. of Zon. App. in Marion Cty.*, *supra*, 317 N.E.2d 193), the lessor is not an indispensable party. (Cf. *Leonard Corp.* v. *City of San Diego* (1962) 210 Cal.App.2d 547, 550 [26 Cal.Rptr. 730].) In any case, the procedural defect—if any—is not jurisdictional in the technical sense. (See *Alta Loma School Dist.* v. *San Bernardino County Com.* (1981) 124 Cal.App.3d 542, 550-551 [177 Cal.Rptr. 506].)

---

[3]Most cases holding to the contrary are distinguishable in that they involved tenants-at-will or short term oral leases. (See cases cited in Annot., 89 A.L.R.2d at pp. 678-679.)

[4]In April 1980, immediately following the trial court's denial of a writ of mandate, Shell Oil petitioned this court in an original proceeding. (*Shell Oil Company* v. *Superior Court*, 1 Civ. 49294.) We denied the petition with a citation to Code of Civil Procedure section 389, relating to indispensable parties. Shell Oil's petition for hearing before the Supreme Court presented the single issue whether the lessor was an indispensable party. The Supreme Court granted hearing and retransferred the case to this court with directions to issue an alternative writ of mandate. After full briefing, we filed our unpublished opinion dismissing the petition for a writ of mandate "on procedural grounds and not on its merits," having concluded that Shell Oil's remedy of appeal was adequate.

The judgment or order appealed from is reversed.

Newsom, J., and Holmdahl, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied April 13, 1983. Grodin J., did not participate therein.