Mildred PEQUINOT, Coalition for the Environment, Inc., Tennis Mahoney, Jane H. Dustin, Don Goss and Ron Wynn, Plaintiffs-Appellants,

v.

The ALLEN COUNTY BOARD OF ZONING APPEALS, Midwest Aggregates Corporation and C.K. Stewart, Defendants-Appellees.

No. 3–582A94.

Court of Appeals of Indiana, Third District.

April 7, 1983.

Robert J. Parrish, Ernest M. Beal, Jr., Peters, Terrill, Parrish & Larson, Thomas J. Blee, Burt, Blee, Hawk & Sutton, Fort Wayne, for plaintiffs-appellants.

James A. Federoff, Raver & Federoff, Fort Wayne, for Allen County Bd. of Zoning Appeals.

William L. Sweet, Jr., John F. Lyons, Barrett, Barrett & McNagny, Fort Wayne, for Midwest Aggregates Corp. and C.K. Stewart.

GARRARD, Judge.

The appellants challenge a special exception granted to Midwest Aggregates Corporation permitting it to construct and operate an asphalt plant at its quarry site.

Midwest Aggregates Corporation (Midwest) operates a gravel quarry in southwest Allen County. In 1979 Midwest wanted to construct and operate an asphalt plant at the quarry site. Midwest filed with the Allen County Board of Zoning Appeals (Board) an application for a special exception [No. 604] from the applicable zoning ordinance. After public hearings were held on the matter, the Board approved the application by a vote of three to one on August 27, 1979. In so doing the Board made the following findings of fact and stipulated several conditions:

"1. The proposed asphalt plant as described by the petitioner would not be deterimental to the environment inasmuch as the plant was designed to meet government pollution standards.

2. The traffic generated by the facility would not be substantially increased or the nature of the traffic changed.

3. Any light and heat emitted from the proposed plant would not adversely interfere with the operation of the Fort Wayne Astronomical Society's telescope at Fox Island Park.

4. The operation of the plant would not create an unacceptable risk to the environment of Fox Island County Park.

5. The proposed plant would not be unduly detrimental to the surrounding area and the plant would substantially serve the public convenience and general welfare.

and further for the above reasons and findings the Board moved that the Special Exception No. 604 be approved with the following conditions:

1. That the plant must meet and continuously conform to all Federal, State and County requirements pertaining to pollution standards.

2. That there be no additional site lighting and further all present security lights which are mercury vapor lights be changed to conventional lighting.

3. That the operation of the asphalt plant be limited to daylight hours.

4. That the plant be located in the area immediately southeast of the quarry maintenance building and located in such a manner to be screened from sight from both Yohne and Lower Huntington Roads so that only the silo of the plant may be visible from either road.

5. That no additional entrances serving the plant be permitted upon either Yohne or Lower Huntington Roads.

6. That the plant be of the type described in the letter of the applicant dat-

ed August 10, 1979; i.e. Barber-Greene DM 71 Dual Zone Thermodrum Asphalt plant."

On September 24, 1979 the appellant remonstrators challenged the Board's decision. They petitioned the trial court for review by writ of certiorari, asserting the Board's decision to grant the special exception was illegal, arbitrary and capricious because (1) the Board failed to find a change in conditions and circumstances had occurred since an application for an asphalt plant on the identical real estate had been denied by the Board in 1973, (2) Midwest was not the owner or agent of the owner of the real estate where the plant was to be located, and (3) the findings of the Board were unsupported by substantial evidence.

The Board and Midwest duly filed answers in reply to the remonstrators' allegations.

On January 15, 1980 the remonstrators moved for summary judgment, contending as a matter of law that the 1979 application was barred under the principles of res judicata. In April 1973 the Board had considered Old Fort Industries' application for a special exception to operate an asphalt plant at the quarry. It is undisputed that Old Fort Industries is the parent company of Midwest. The Board denied Old Fort's application and made this conclusory finding: "The asphalt plant was denied inasmuch as there was no showing that the proposed plant would eliminate sources of pollution, particulate matter, odor, or liquid waste." Old Fort was granted a special exception for the operation of a ready mix concrete plant on the site. In moving for summary judgment the remonstrators argued special exception No. 604, granted to Midwest, was void because a substantial change of circumstances had not occurred between the filing of the application on March 21, 1973 and the filing of the application on May 18, 1979. They contend such a change in circumstances, and a finding thereof by the Board, was an essential condition to the validity of the 1979 grant of the special exception.

On February 21, 1980 the trial court ruled the remonstrators were entitled to a summary judgment to the extent that special exception No. 604 be remanded to the Board for a determination of whether the doctrine of administrative res judicata invalidated the granting of the special exception.

On May 14, 1980 the Board held public hearings on the issue of whether a substantial change in circumstances had occurred since 1973. On May 15, 1980 the Board found the circumstances which had induced the Board's denial in 1973 had substantially changed and "this change in circumstances precluded the previous judgment of the Board from acting as a bar to its consideration of S.E. No. 604."

On August 22, 1980 the remonstrators filed a second motion for summary judgment in which Midwest's standing to seek a special exception was challenged. A hearing was held on October 20, 1980. The court on December 15, 1980 remanded the issue to the Board. The court in doing so found the "original remonstrance placed in issue before the Respondent's [Midwest's] standing to proceed .... That BZA [Board] has never addressed that issue nor made finding as to standing."

On January 14, 1981 the Board held a public hearing on the issue and on February 11, 1981 entered findings of fact and conclusions of law, determining Midwest had standing to sustain its application.

Ultimately the trial court affirmed the Board's finding that res judicata did not bar the application and that Midwest had standing to seek the application. The remonstrators appeal from this final judgment of the trial court urging review of both of these determinations.

ISSUE 1:

■ Did Midwest have standing to seek a special exception from the zoning ordinance?

Midwest was operating the quarry site as an assignee under a lease agreement when it applied for the special exception. The lessor, and titleholder in fee simple, was the

Milburn Poole Estate. Remonstrators assert Midwest did not have standing to seek a special exception because the terms of the lease prohibited the operation of an asphalt plant on the property.

We considered the question of whether a lessee has standing to seek a zoning variance in *Bowen v. Metropolitan Board of Zoning Appeals* (1974), 161 Ind.App. 522, 317 N.E.2d 193. The lessee therein obtained a variance from the Board of Zoning Appeals. The lessors objected on the basis that "their consent as 'owners' was necessary to give the Board jurisdiction to hear and determine the petition for the variance and that since they had not given it the Board had no jurisdiction." *Id.* 317 N.E.2d at 195. The lessors obtained review of the Board's decision by writ of certiorari. We directed the trial court to remand the case to the Board with directions to make special findings of fact on the issues raised by the lessor's objections. However, we nevertheless discussed the standing issue extensively and concluded that a lessee for a term of years would ordinarily have sufficient standing to present a question of use variance within the estate granted by its lease.

Also, in *Fail v. LaPorte County Board of Zoning Appeals* (1976), 171 Ind.App. 192, 355 N.E.2d 455, 459 we determined a contract purchaser had sufficient interest in the property to seek a zoning variance.

The remonstrators herein are not challenging Midwest's standing because it is a lessee.[1] Rather, they contend the lease prohibits the operation of an asphalt plant on the leased premises, and *therefore* Midwest does not have standing. In support the remonstrators cite *Bowen,* and quote the following portion from that opinion:

"A lessee in possession of real estate under a lease with an unexpired term of eighty-nine years would be 'entitled to receive the benefits of' his petition for a variance, provided the lease contains nothing to prohibit his use of the property in the manner the variance would permit. Conversely, it would appear the lessor's interest in obtaining the variance would be quite remote, unless the lease provisions concerning rent were such that it might be greater if the variance were granted."

317 N.E.2d at 198.

Thus, a condition of the lessee's interest in the property being sufficient for standing purposes is that the lease not prohibit the use of the property in the manner which the variance would permit. Remonstrators contend the lease does prohibit the construction and operation of an asphalt plant on the leased property. The lease in relevant part provides:

"Lessor, for and in consideration of Fifty Dollars ($50.00) cash in hand paid, the receipt of which is hereby acknowledged, and of the covenants and agreement hereinafter contained, on the part of Lessee to be paid, kept and performed, has granted the demised lease and does, by these presents, grant, demise, lease and let unto the Lessee for the sole purpose of mining, operating and marketing such quantities of gravel, sand and topsoil as may be found in and on all that certain tract of land situated in Allen County, State of Indiana, ... It is agreed and understood that Lessee shall have the right to construct and erect any and all necessary machinery, buildings, trackage, etc. in and on the aforesaid land as may be required for the proper and economical operation thereof; and Lessee shall have the right at any time that the industry contemplates hereunder to remove from said premises all such machinery, equipment and buildings without hindrance from Lessor."

Each party focuses upon different portions of the lease in making their arguments. The remonstrators contend the lease is "for the sole purpose of mining, operating and marketing such quantities of gravel, sand and topsoil as may be found" on the tract. Therefore, the production of asphalt is prohibited by the lease. In reply, Midwest emphasizes the language providing lessees with the right "to construct and

---

1. Midwest actually possesses the property as an assignee.

erect any and all necessary machinery, buildings, trackage, etc. in and on the aforesaid land as may be required for the proper and economical operation thereof; ...." entitled Midwest to construct and operate an asphalt plant.

The Board on remand found:

"9. Use of the subject real estate by Midwest Aggregates Corp., as assignee of the leasehold interest therein, for construction and operation of an asphalt plant was neither contrary to, nor prohibited by, the above-mentioned terms of said lease. Said lease, therefore did permit Aggregates Corp. to use the property for construction and operation of the asphalt plant proposed."

Midwest also argues that by the time the special exception was granted on August 27, 1979 it held the property in fee simple absolute. On August 2, 1979 the Board received a letter from Midwest's counsel stating Midwest had title to the quarry site in fee simple absolute. The record does not contain any probative evidence to this effect, other than counsel's assertion of such fact directed to the Board. In its findings on remand the Board found:

"8. During the pendency of these proceedings, including the hearing conducted before the Board on January 14, 1981, the remonstrators have never introduced any evidence to rebut or contradict the assertion of counsel for Midwest Aggregates Corp., that the petitioner in fact acquired title in fee simple on August 2, 1979 to the subject real estate."

The Board also found:

"11. Neither Allen County Ordinance No. 8–1960, nor the regulations of the Board, specifically require an application for Special exception to be submitted by the titleholder of record of real estate; and the information required on the form supplied by the Board for an application for Special Exception is not dispositive of the question of 'ownership' of property for purposes of determining standing in administrative proceedings before this Board."

On November 24, 1981 final hearing was held on the matter. The record states:

"The Court finds that the Findings of Board of Zoning Appeals upon remand of the issues of standing and res adjudicata [sic] are sufficient and further finds that the decision of the Board of Zoning Appeals in Special Exception No. 604 was not arbitrary, unreasonable, or capricious.

The decision of the Board of Zoning Appeals on Special Exception No. 604 is therefore affirmed."

Record at p. 612.

In *Boffo v. Boone County Board of Zoning Appeals* (1981), Ind.App., 421 N.E.2d 1119, 1123 we discussed the applicable standard of review:

"Likewise, the same standard of review is applied by a court when confronted by a petition appealing the determination of a board of zoning appeals with regard to both variances and special exceptions:

'On review, the decision of the Board will not be reversed unless there is a clear showing of abuse of discretion, or a lack of substantial evidence to support the Board's decision or an error of law in such decision. *Carlton et al. v. Bd. of Zoning Appeals* (1969), 252 Ind. 56, 65, 245 N.E.2d 337, and cases cited therein.'

"*Stanley v. Board of Zoning Appeals, Jasper County* (1972), 152 Ind.App. 418, 283 N.E.2d 809 at 811. That such a result is logical and reasonable flows from the fact that in either case the appeal is from a final determination of an administrative agency. There is a presumption that determinations of a zoning board, as an administrative agency with expertise in the area of zoning problems, are correct and should not be overturned unless they are arbitrary, capricious, or patently unreasonable so as to constitute an abuse of discretion. *Value Oil Co. v. Town of Irvington* (1978), 152 N.J.Super. 354, 377 A.2d 1225 (L.Div.1977); *aff'd.* 164 N.J.Super. 419, 396 A.2d 1149 (1978). Thus, a reviewing court does not conduct a trial de novo and may not substitute its decision for that of the Board. *Metropolitan Board of Zoning Appeals v. Standard Life*

Insurance Co. (1969), 145 Ind.App. 363, 251 N.E.2d 60 *trans. denied* (1970); *Devon Civic League v. Marion Co. Board of Zoning Appeals* (1967), 140 Ind.App. 519, 224 N.E.2d 66, *trans. denied.* Likewise, courts may not make findings for the agency by inference based on evidence in the record. It is the agency's duty to make the findings; courts may only review, not make by inference, such findings. Whether such findings are supported by evidence in the record, however, is a matter courts may determine. If the findings are not supported by evidence the board will be said to have abused its discretion in granting the relief requested."

We consider the pertinent findings of the Board. We do not agree with the Board's finding that remonstrators had the burden of rebuttal on the issue of whether Midwest was titleholder in fee simple on the date the application was granted. A survey of the record does not disclose any probative evidence on the issue. We do not believe Midwest's counsel's assertion of such fact is evidence of a nature upon which the Board's decision should be based. A deed to such effect would be probative evidence but none is of record here.

However, we find that as lessee, Midwest did have standing to pursue the application for special exception. In their brief remonstrators do not contest this. Rather, they assert the lease prohibits the operation of an asphalt plant on the premises. The Board found otherwise. We cannot say that in so finding the Board abused its discretion or made conclusions contrary to law. We therefore determine the Board did not err in finding Midwest had standing to seek the special exception.

ISSUE 2:

 Was Midwest's application barred by the doctrine of administrative res judicata?

In 1973 Old Fort Industries, the parent company of Midwest, applied for a special exception to construct and operate an asphalt plant at the quarry site. The Board found "The asphalt plant was denied inasmuch as there was no showing that the proposed plant would eliminate sources of pollution, particulate matter, odor or liquid waste." However, under the same application the Board did grant Old Fort a special exception to operate a ready mix concrete plant at the quarry.

In 1979 Midwest made its application for the construction and operation of an asphalt plant and ultimately the special exception was granted by the Board and affirmed by the trial court. The remonstrators contend Midwest was precluded from obtaining a special exception under the doctrine of administrative res judicata.

We first acknowledged the doctrine in *Braughton v. Metropolitan Bd. of Zoning Appeals* (1970), 146 Ind.App. 652, 257 N.E.2d 839, and in *Carpenter v. Whitley Co. Plan Comm.* (1977), 174 Ind.App. 412, 367 N.E.2d 1156 the court observed that it arises from the quasi-judicial function exercised by zoning boards, and "incorporates the policies of res judicata, i.e., that in the interest of economy, predictability and repose of the parties, a matter which is finally determined should not be relitigated." 367 N.E.2d at 1158. Other jurisdictions have characterized the policy as one of "administrative finality." *See, e.g., Burke v. Zoning Bd. of Review* (1968), 103 R.I. 404, 238 A.2d 50.

In *Easley v. Metropolitan Bd. of Zoning Appeals* (1974), 161 Ind.App. 501, 317 N.E.2d 185 the court fleshed in the doctrine by explaining that:

"When the facts and circumstances *which actuated an order or a decision* are alleged and shown to have so changed as to vitiate or materially affect *the reasons which produced and supported it,* and no vested rights have intervened, it is reasonable and appropriate to the functions of the board that the subject matter be re-examined in the light of the altered circumstances." (Emphasis in original.)

317 N.E.2d at 191–92.

The *Easley* court then noted the problem created by the general absence of specific findings in the denials entered by zoning boards and concluded that zoning boards

should be required to enter specific findings and that the burden of proving a change in circumstances so as to avoid the bar should be upon the petitioner.

In *Boffo v. Boone Co. Bd. of Zoning Appeals* (1981), Ind.App., 421 N.E.2d 1119 the court considered the significant substantive differences that distinguish zoning variances from special exceptions, but concluded that the rule of *Easley* should apply to proceedings for special exceptions as well as to those for variances.

Considering the validity of the special exception solely on the res judicata question, we find the decision of the Board to be supported by the evidence. In 1973 Old Fort Industries stated its proposed asphalt plant would meet existing state standards with regard to permissible pollution emissions and discharges. Even so the Board determined those standards were not adequate in terms of meeting the statutory criteria for a special exception. No federal regulations were in effect with regard to the asphalt plant in 1973. In the intervening years a substantial evolution in environmental law occurred. Both state and federal regulations were enacted substantially limiting permissible pollution levels. Midwest in its application pledged the proposed asphalt plant would be a "new source" one. In other words, the plant and its operation would have to comply with all current state and federal environmental regulations. In summary, Midwest argued, and produced evidence to the effect, that the plant proposed in special exception No. 604 would significantly and materially reduce the amount of pollutants and sources of pollution from the plant applied for in 1973.

In 1973 the Board denied the special exception because there was no showing that the plant would eliminate sources of pollution. In its 1979 application, and during the ensuing hearing process, Midwest put forth evidence that the operation of the proposed plant would produce considerably less pollu-

tion, and would operate within the stringent levels set by state and federal regulations since 1973.

We believe that based on these facts, a change in circumstances was demonstrated to the extent that the doctrine of administrative res judicata did not preclude the Board's consideration and granting of special exception No. 604. We are not determining whether Midwest had a right to special exception under the Allen County Zoning Ordinance. That issue is not before us.[2] Rather, we find only that the doctrine of administrative res judicata did not preclude either a consideration or grant of the special exception under the facts of this case.

For the foregoing reasons we affirm.

HOFFMAN, P.J., and STATON, J., concur.

---

**2.** The parties do not argue that the decision of the Board was arbitrary, capricious or unlawful concerning the merits of otherwise qualifying for a special exception. In addition, the ordinance is not in the record. *See Elmore v. City of Sullivan* (1978), Ind.App., 177 Ind.App. 495, 380 N.E.2d 108.