**Freddie HATCH, Defendant–Appellant,**

v.

**STATE of Indiana, Plaintiff–Appellee.**

No. 02A03–8809–CR–293.

Court of Appeals of Indiana,
Third District.

Jan. 30, 1989.

Richard J. Thonert, Fort Wayne, for defendant-appellant.

Linley E. Pearson, Atty. Gen., John D. Shuman, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

GARRARD, Presiding Judge.

Freddie Hatch was convicted of operating a vehicle while intoxicated. *See* IC 9–11–2–2. His appeal challenges the validity of his arrest, the admissibility of the breath test evidence, and sufficiency of the evidence. We affirm.

On the night of December 14, 1987, Fort Wayne Police Officer Paul Smith was patrolling in his police car. He noticed an old green car that was proceeding in the same direction as Smith, weaving and crossing the center line where it proceeded east for a distance in the westbound lane before returning to the eastbound lane. Officer Smith turned on his red lights and siren and the green car pulled over and stopped.

Officer Smith went up to the car and asked the driver for his driver's license and vehicle registration. The driver offered him an I.D. card.[1] Smith then told the driver, Hatch, to return with him to the squad car where he radioed in to see if Hatch had a valid operator's license. Once the two men were inside the squad car Smith smelled a strong odor of alcohol on Hatch. (He explained that it was quite cold that night and while he suspected the driver had been drinking, he did not smell the alcohol until the two were in the squad car.) Smith then told Hatch that he had reason to believe he was driving while intoxicated, that before he could arrest him for that Hatch would be given a breath test by a qualified operator, that if Hatch refused the test his license would be suspended for a year, and that Smith was taking Hatch to the police station for a breath test. (Tr. 51). The test was subsequently administered and showed a blood alcohol content of .18. Additionally, Officer Smith testified that Hatch was loud and belligerent when he was taken into custody and at the police station.

■ Hatch first contends that he was placed in custody at the time he was told to leave his car and get into the police car. He asserts that at that point in time the police did not have probable cause to believe he was driving while intoxicated and therefore all subsequent evidence should have been suppressed as the fruit of an unlawful arrest. Secondly, he asserts he was never advised of the effects of the implied consent law. *See* IC 9–11–4–2.

Officer Smith observed Hatch driving left of center. That is a traffic infraction. IC 9–4–1–63. When he stopped Hatch, Hatch failed to produce a driver's license. This created probable cause to believe that Hatch was in violation of IC 9–1–4–40(b), which requires operators to have their licenses in their immediate possession and produce them upon demand by a police officer authorized to enforce traffic regulations. Also, as the state points out, IC 34–4–32–2 permits an officer to briefly detain a person whom the officer in good faith believes has committed an infraction or ordinance violation in order to obtain basic information and allow the person to execute a notice to appear.

Here the officer had grounds to stop Hatch's car for driving left of center. When Hatch failed to produce an operator's license the officer reasonably detained him briefly to determine by radio whether he had a license. When the two were in the police car the officer secured probable cause to believe Hatch was driving while intoxicated. He then proceeded on that basis. Hatch's additional assertion that he was not advised concerning the implied consent law merely seeks a redetermination of credibility, since the officer testified to giving the advice. We may not second guess the factfinder's determination of that question.

■ Hatch next attacks the admission of state's exhibits 1 through 4 which were offered to establish certification of the breath test operator and of the machine and chemicals, that the proper procedure was followed, and the test result.

Hatch first asserts pursuant to IC 9–11–4–5(d) these exhibits must be in accord with rules adopted by the director of the Department of Toxicology of the Indiana University School of Medicine as required by IC 9–11–4–5(a). He argues there was a failure of proof because no copy of such regulations was offered in evidence. None was necessary. The regulations, adopted pursuant to IC 4–22–9–2, appear at 260 IAC 1.1–1–1 through 1.1–4–5. IC 4–22–9–3 provides that rules so adopted shall be judicially noticed by all courts and agencies of this state. *Cf. Bowen v. Metro. Bd. Zon. App.* (1974), 161 Ind.App. 522, 317 N.E.2d 193. The rules were properly before the court.

■ Hatch also objected to exhibit 1, which identified certain personnel, including Officer Rodebaugh who administered the test to Hatch, as certified chemical test operators. He contends the exhibit was hearsay and not properly executed.

---

**1.** The record contains no further explanation of what this identification was.

The exhibit certified that the persons therein named were duly examined and recertified as chemical test operators by the Department of Toxicology of the Indiana University School of Medicine for the period to and including July 31, 1989. It was signed by Michael A. Evans as Director of the State Department of Toxicology and was subscribed and sworn to before a notary public. It had been filed with the county clerk and bore certification to that effect. In addition, the document was certified by the county clerk to be a true copy of the document as recorded in her office.

The document complies with 260 IAC 1.1–1–3 and meets the requirements set forth in IC 9–11–4–5. While it was in the form of a letter certifying eleven individuals rather than a certified copy of a "certificate" as stated in IC 9–11–4–5(c), it met all the requirements for authenticity imposed by the statute and regulations and was admissible pursuant to IC 9–11–4–5(c)(1).

Similarly, exhibit 2 which was captioned "Certificate of Inspection of Chemicals and Chemical Test Devices For Use Pursuant To The Indiana Law For Implied Consent To Test For Intoxication" contained the necessary information and same certifications by Michael A. Evans and the county clerk. See IC 9–11–4–5(a)(2); 260 IAC 1.1–2–1. It, too, was admissible pursuant to IC 9–11–4–5(c)(1).

Exhibit 3 was the checklist for operation of a test utilizing an Intoxilyzer 5000. It conformed to the regulation governing tests by that device, 260 IAC 1.1–4–4, and was authenticated by Officer Rodebaugh who administered the test.

Since the requirements of IC 9–11–4–5(d) were met (that the operator, equipment, chemicals and technique had all been approved in accordance with the regulations) the test result, exhibit 4, was also properly admitted.

The proper admission of the exhibits largely undercuts Hatch's argument that the evidence was insufficient. The element of impairment was satisfied by the evidence of Hatch's weaving and crossing the center line. The evidence sustained the conviction.

The conviction is affirmed.