**Denzil D. STURGEON, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 79A02–9007–CR–413.[1]

Court of Appeals of Indiana,
First District.

July 31, 1991.

Brent Westerfield, Indianapolis, for appellant-defendant.

Linley E. Pearson, State Atty. Gen. and Preston W. Black, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee-plaintiff.

ROBERTSON, Judge.

Denzil D. Sturgeon appeals his conviction of operating a motor vehicle while intoxicated, a class D felony. He alleges the trial court's jury instructions impermissibly shifted to him the burden of persuasion on

---

**1.** This case was reassigned to this office on July 1, 1991.

the element of intoxication.[2]

We reverse.

The Due Process Clause of the Fourteenth Amendment protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged. *Francis v. Franklin* (1985), 471 U.S. 307, 314, 105 S.Ct. 1965, 1971, 85 L.Ed.2d 344 citing *In re Winship* (1970), 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368. This constitutional principle prohibits the State from using evidentiary presumptions in a jury charge that have the effect of relieving the State of its burden of persuasion beyond a reasonable doubt of every essential element of a crime. *Id. citing Sandstrom v. Montana* (1979), 442 U.S. 510, 520–24, 99 S.Ct. 2450, 2457–59, 61 L.Ed.2d 39.[3]

To ascertain whether the Constitution has been violated by the use of an evidentiary presumption, the court must determine whether the challenged portion of the instruction creates a mandatory presumption or merely a permissive inference. *Franklin,* 471 U.S. at 315, 105 S.Ct. at 1971. A mandatory presumption instructs the jury that it must infer the presumed fact if the State proves certain predicate facts.[4] These types of presumptions violate the Due Process Clause if they relieve the State of the burden of persuasion on an element of an offense.

A permissive inference suggests to the jury a possible conclusion to be drawn if the State proves predicate facts, but does not require the jury to draw that conclusion. *Id.* at 315, 105 S.Ct. at 1971. It does not relieve the State of its burden of persuasion because it still requires the State to convince the jury that the suggested conclusion should be inferred based on the predicate facts proved. A permissive inference violates the Due Process Clause only if the suggested conclusion is not one that reason and common sense justify in light of the proven facts before the jury. *Id.* at 315–16, 105 S.Ct. at 1971–72.

Challenged portions of jury instructions are not considered in isolation. If the language of an instruction could reasonably have been understood as creating a presumption that relieves the State of its burden of persuasion on an element of an offense, the potential offending words must be considered in the context of the charge as a whole. *Id.* at 316, 105 S.Ct. at 1972. Error in a particular instruction will not properly justify reversal unless the error is of such a nature that the whole charge of which it forms a part misleads the jury as to the law of the case. *Walker v. State* (1986), Ind., 497 N.E.2d 543, 545.

The trial court instructed the jury in the present case that

prima facia (sic) evidence means such evidence as is sufficient to establish a given fact, and will remain sufficient if uncontradicted. At the trial of a person charged with operating a vehicle while intoxicated ... evidence that there was .10%, or more, by weight of alcohol

---

**2.** The State maintains that Sturgeon has not preserved error because of his failure to object to the instructions at trial. The State also argues that Sturgeon has failed to allege fundamental error. However, Sturgeon repeatedly characterizes the consequence of the error before us as a violation of "fundamental due process." Fundamental error is error which if not rectified would deny the defendant fundamental due process. *Smith v. State* (1984), Ind., 459 N.E.2d 355, 357. Moreover, instructions which impermissibly shift the burden of proof on an element of the offense are generally considered fundamental error, mandating a new trial. *Reid v. State* (1988), Ind., 529 N.E.2d 1309. Confronted with such error, it would be our responsibility to address the issue sua sponte.

**3.** The U.S. Supreme Court opinions address evidentiary presumptions which effect the State's

burden of persuasion. To the best of our knowledge, no such opinion reaches whether a mandatory presumption that shifts only the burden of production to the defendant is consistent with the Due Process Clause.

**4.** A mandatory presumption may be either conclusive or rebuttable. *Francis,* 471 U.S. at 315, n. 2, 105 S.Ct. at 1971, n. 2. A conclusive presumption removes the presumed element from the case once the State has proved the predicate facts giving rise to the presumption while a rebuttable presumption does not remove the presumed element from the case but nevertheless requires the jury to find the presumed element unless the defendant persuades the jury that such a finding is unwarranted. *Id.*

in his blood constitutes prima facia (sic) evidence that he was intoxicated.... If in a prosecution for an offense under Indiana Code 9–11–2, evidence establishes that (1) a chemical test was performed on a test sample taken from the person charged with the offense within the three hour time period allowed for testing, and (2) the person charged with the offense had at least .10% by weight of alcohol in the person's bloood (sic) at the time the test sample was taken. It (sic) shall be presumed that the person charged with the offense had at least .10% by weight of alcohol in the person's blood at the time the person operated the vehicle. Whenever a driver of a motor vehicle has committed a traffic violation shows evidence of intoxication and has a blood alcohol content of 10%, or more, such evidence will sustain a conviction for operating a motor vehicle while intoxicated.

Portions of the jury instructions challenged in this case have already been analyzed by this court. In *Chilcutt v. State* (1989), Ind.App., 544 N.E.2d 856, the third district of this court held that an instruction parroting the language of Ind.Code 9–11–4–15 did not unconstitutionally shift the burden of persuasion from the State to prove a defendant's blood alcohol content (BAC) was .10% at the time of the offense. *Accord Keyes v. State* (1990), Ind.App., 559 N.E.2d 1216. However, the second district of this court departed from the *Chilcutt* holding in *Hall v. State* (1990), Ind.App., 560 N.E.2d 561, observing that while it was true an instruction "faithfully tracking" the language of the statute did not create a conclusive presumption, such an instruction in a particular case, when unaccompanied by an advisement, perhaps found in the charge as a whole, that the jury was free to accept or reject the presumption if the defendant did not come forward with evidence to rebut it, did compel the trier of

fact to find the presumed fact of blood alcohol content at the time of vehicle operation.

The charge in the present case differs from that found to be constitutionally inadequate in *Hall* only in that it is more onerous. As in *Hall*, the instruction is irrefutably mandatory in that it fails to inform the jury that they have a choice or might infer the desired conclusion. But the instruction involved here departs from the language of the statute in that nowhere in the challenged instruction or the charge as a whole does the court inform the jury that the presumption of BAC at the time of operation is rebuttable. Unlike the instruction given in *Hall*, the presumption created by this instruction is therefore conclusive as well as mandatory.

Moreover, the charge as a whole does nothing to dispel the constitutional infirmity identified in *Hall*. To the contrary, the instructions compound the infirmity by requiring the jury to find both the presumed fact, BAC level at the time of operation, *and the element of intoxication* from proof of BAC level at the time of testing.[5] By defining prima facie as evidence sufficient to establish a given fact which will remain sufficient *if uncontradicted,* a reasonable juror could easily have understood the instruction as indicating Sturgeon bore the affirmative burden of persuasion on the element of intoxication once the State proved a BAC level at the time of testing of .10%. These deficiencies are not alleviated by the court's instruction that a traffic violation, evidence of intoxication and a BAC level of .10% will sustain a conviction of operating a motor vehicle while intoxicated. At best, this portion of the instruction contradicts earlier statements that a BAC test result of .10% is itself prima facie evidence of intoxication. Language that merely contradicts and does not explain a constitutionally infirm instruction will not

---

**5.** When a defendant is charged with driving while intoxicated, the State may not make its case merely by demonstrating that the defendant was driving with a BAC of .10% or above; rather, the State must demonstrate that the driver was intoxicated, i.e., that he was under the influence of alcohol "such that there [was] an impaired condition of thought and action and the loss of normal control of [the driver's] faculties to such an extent as to endanger any person." Ind.Code 9–11–1–5; *Warner v. State* (1986), Ind.App., 497 N.E.2d 259; *Sering v. State* (1986), Ind.App., 488 N.E.2d 369.

suffice to absolve the infirmity, for a reviewing court has no way of knowing which of two irreconcilable instructions the jurors applied in reaching their verdict. *Francis v. Franklin*, 471 U.S. at 323, 105 S.Ct. at 1976. General instructions on the State's burden of persuasion and the defendant's presumption of innocence are not inconsistent with the burden-shifting presumption and therefore do nothing to lessen the harm. *Id.* Accordingly, we must conclude that the trial court committed constitutional error by giving the challenged instruction at Sturgeon's trial.

■ However, the erroneous instruction at issue here does not compare with the kinds of errors that automatically require the reversal of an otherwise valid conviction. *See Rose v. Clark* (1986), 478 U.S. 570, 580, 106 S.Ct. 3101, 3107, 92 L.Ed.2d 460. An instruction that impermissibly shifts the burden of proof on an element of the offense is not so basic to a fair trial that it can never be harmless. *See id.* at 580–81, 106 S.Ct. at 3107–08; *Reid v. State* (1988), Ind., 529 N.E.2d 1309. Thus, *Chapman v. California* (1967), 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 and its progeny mandate that we consider the entire record prior to reversing a conviction for constitutional error that may be harmless beyond a reasonable doubt.

The evidence of Sturgeon's intoxication is neither undisputed nor overwhelming. Sturgeon's breathalyzer results showed a BAC of .12%. The arresting officer testified that such a result correlates with the consumption of approximately ten beers. However, Sturgeon testified that he had only four beers from the time he left work at approximately 5:10 p.m. on the evening of December 2, 1988 until he was stopped by the officer. Sturgeon's testimony concerning the level of his alcohol consumption and state of intoxication is corroborated in part by the testimony of the bartender at the second tavern he visited that evening. The bartender testified that when Sturgeon arrived he did not smell of alcohol and did not appear intoxicated but pursuant to the tavern's policy, he served Sturgeon only three beers, as Sturgeon testified. The

bartender also corroborated Sturgeon's testimony that Sturgeon left the bar to begin his forty-minute drive home at about 9:00 p.m. and did not appear intoxicated when he left. The arresting officer stopped Sturgeon at approximately 10:12 p.m.

Sturgeon contended that the officer was mistaken when he testified that Sturgeon ran a red light. He admitted that he may have been in the intersection when the light turned red but contended that he entered the intersection when the light was green. Because his car was malfunctioning, he could not determine the direction of an approaching ambulance and stopped where he was. The officer acknowledged that in fact an ambulance passed through the intersection while Sturgeon was sitting in the middle of it. Likewise, the officer admitted that steam was escaping from under the hood of Sturgeon's vehicle when he stopped Sturgeon. Sturgeon maintained that as he traveled home, he hit a drainage grate, damaging his tire and aggravating an already existing radiator leak. Apparently, he also lost his power steering as a consequence of the mishap. Sturgeon replaced the flat tire with a spare which had a separation around the middle, causing the vehicle to pull to the right. Thus, he was able to account for the weaving observed by the officer, his presence in the intersection during the red light, and the time period after he left the bar.

Sturgeon's testimony concerning the state of his vehicle is also substantiated at least in part by the testimony of the purchaser of the vehicle and Sturgeon's wife. When the vehicle's purchaser, a former deputy sheriff, acquired the car, it was inoperable and had to be towed. With the car was the flat tire described by Sturgeon and the spare with the separated middle. After Sturgeon's arrest, his wife attempted to remove the car from the highway but was unable to do so without the assistance of a wrecker service. Because the wrecker service people did not believe the car would make it the thirty miles or so Sturgeon's wife intended to travel home, once repairs were made, Mrs. Sturgeon had her mother follow her home. Because of the difficulty

steering, she could travel only about 40–45 miles per hour.

The arresting officer's conclusion of intoxication drawn from an observation of Sturgeon's physical appearance is also inconclusive. The officer smelled alcohol but was unable to discern that the smell was coming from Sturgeon's body until he got in the police car with Sturgeon. Sturgeon did not sway when he walked to the police car or slur his speech. He was asked to recite the alphabet and count backwards from ten which he did slowly and accurately. The officer also gave Sturgeon a horizontal gaze nystagmus test at the time of the stop, but his observations were limited to one eye since Sturgeon has a glass eye. The officer reported a bouncing movement of the pupil at the maximum deviation and that Sturgeon's eye was red and bloodshot. After the officer administered the breathalyzer, Sturgeon performed heel to toe and one leg stand dexterity tests. Sturgeon was able to perform both tests without support but swayed "a little bit."

The officer observed no alcoholic beverage containers in Sturgeon's car.

In sum, the evidence adduced is of such a nature that the jury could have accepted both the officer's testimony and that offered from Sturgeon's witnesses as true. Given the inconclusive nature of the evidence of appearance of intoxication and the conflicting opinion of the bartender that Sturgeon did not appear intoxicated, the likelihood of the jury's erroneous reliance upon the constitutionally infirm instructions is greatly enhanced. We are thus unable to conclude that the error was harmless beyond a reasonable doubt. Sturgeon's conviction of operating a motor vehicle while intoxicated must therefore be reversed.

Judgment reversed and remanded.

SHIELDS and BARTEAU, JJ., concur.