**Michael J. REGAN, Appellant–Defendant Below,**

v.

**STATE of Indiana, Appellee–Plaintiff Below.**

No. 92A03–9111–CR–339.

Court of Appeals of Indiana, Third District.

April 21, 1992.

Richard J. Thonert, Romero & Thonert, Fort Wayne, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Preston W. Black, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

STATON, Judge.

Michael J. Regan appeals his conviction for operating a vehicle while intoxicated, a Class A misdemeanor, raising eight issues for our review, which we consolidate into seven:

I. Whether the *corpus delicti* of the crime of operating a vehicle while intoxicated was adequately established before incriminating statements made by Regan were admitted.

II. Whether the trial court erred in denying Regan's motion to suppress statements made by him.

III. Whether the evidence was sufficient to support Regan's conviction for operating a vehicle while intoxicated and for operating a vehicle with .10% or more by weight of alcohol in the blood.

IV. Whether Indiana Code 9–11–2–1 is unconstitutional.

V. Whether the trial court erred in admitting a number of the State's exhibits.

VI. Whether the trial court erred in giving certain instructions tendered by the State.

VII. Whether the trial court erred in refusing two of the defendant's tendered instructions.

We affirm.

On the night of February 21, 1990, Robert Reavis, the owner of a towing service, responded to a telephone call requesting assistance in removing a vehicle from a ditch on County Road 500 South in Whitley County. Reavis radioed the Whitley County Sheriff, informing the dispatcher that he was proceeding to a possible automobile accident. When he reached County Road 500 South, he was flagged down by Regan, who was standing next to a late model Jeep Cherokee which was mired in the mud at the bottom of a fifteen-foot deep ditch and in danger of rolling over. As Reavis was speaking with Regan regarding the extrication of the Jeep, Deputy Dennis Ruch arrived on the scene.

Ruch asked Regan to sit in his car while he took down his name, address, and license number. As he spoke to Regan, Ruch noticed a "very strong" odor of alcoholic beverages about Regan. He asked Regan to accompany him to the Sheriff's Department to submit to an Intoxilyzer test. Regan agreed to submit to the test, and his blood alcohol content (BAC) registered .15%. Meanwhile, as Reavis was attempting to extricate the Jeep, he observed empty beer cans on the front floorboard of the Jeep, unopened beers behind the passenger's seat, and an open can of beer on the front seat. Regan was arrested for operating a vehicle while intoxicated (OWI) and was convicted pursuant to a jury trial.

## I.

### Corpus Delicti

Regan first contends that the trial court erred in admitting statements which he made to Reavis and Deputy Ruch before the *corpus delicti* of the crime was established. The *corpus delicti* requirement seeks to prevent the admission into evidence of a confession by a defendant to a crime which never occurred. *Hurt v. State* (1991), Ind., 570 N.E.2d 16, 19. The rule requires evidence independent of the defendant's statement which shows that a criminal act actually occurred. *Id.* at 20. The

evidence need not be introduced prior to the admission of the statement; it may come after. *Id.* Moreover, each element of the crime need not be proved beyond a reasonable doubt to establish the *corpus delicti*—independent evidence from which an inference may be drawn that a crime was committed in connection therewith is sufficient. *Id.*

■ Here, the State introduced evidence that somebody summoned Reavis to pull a Jeep Cherokee out of a ditch, that a number of beer cans, both full and empty, were found in the Jeep, and that a partly-full can of beer was found on the front seat of the Jeep. In addition, Reavis testified that he was flagged down by Regan, that Regan was the only person at the scene of the accident when Reavis arrived, and that the closest house was one-half mile down the country road, all supporting an inference that Regan had been driving the car. *Parsons v. State* (1975), 166 Ind.App. 152, 333 N.E.2d 871, 873; *Groves v. State* (1985), Ind.App., 479 N.E.2d 626, 628. This evidence was sufficient to establish the *corpus delicti* of the crime.

## II.

### *Motion to Suppress*

At trial, Regan moved to suppress all evidence gained as a result of his conversations with Deputy Ruch on the grounds that the evidence was the product of an unlawful detention. The trial court found that he was not seized without probable cause and denied the motion to suppress. On appeal, Regan alleges this ruling was erroneous.

■ Evidence which is the product of an unlawful detention or an illegal arrest is inadmissible. *Dillon v. State* (1983), Ind., 454 N.E.2d 845, 851, *cert. denied* 465 U.S. 1109, 104 S.Ct. 1617, 80 L.Ed.2d 145. However, not every police-citizen encounter amounts to a "seizure" of the person so that an arrest or unlawful detention has occurred. *Id.* In determining whether a person has been "seized" for Fourth Amendment purposes, we must ascertain whether, considering all the circumstances surrounding the police-citizen encounter, the defendant entertained a reasonable belief that he was not free to leave. *Id.*

■ This case is similar to *Clark v. State* (1987), Ind.App., 512 N.E.2d 223, in which a police officer received a dispatch that a vehicle was off the road and a person was walking on the highway nearby. Upon proceeding to investigate, he saw the person (later identified as Clark), stopped, and asked him where he was going. Clark told him he had just run his car off the highway and was walking into town. The officer offered him a ride and soon noticed that Clark had a strong odor of alcohol about him and his eyes were watery and bloodshot. After administering a number of field sobriety tests, the officer told Clark he had probable cause to believe that he had operated his automobile while intoxicated, and administered an Intoxilyzer test, which registered .16. Faced with an argument similar to that raised by Regan, our First District held that the trial court did not err in admitting Clark's responses to the officer.

Turning to the present case, Regan makes much of the fact that he was questioned while in the officer's car. The record reveals that Regan spoke with Deputy Ruch after 9:30 p.m. on a February evening, and while they were speaking, Reavis was preparing to tow the Jeep out of the ditch. Under the circumstances, we do not find it unusual that they spoke in the squad car, rather than outside. Like in *Clark*, the questions which Deputy Ruch asked Regan were "routinely investigative in nature, and were non-custodial." *Id.* at 227. Regan was asked whether he had placed the call to the wrecker service and for his name, address, and social security number. He volunteered a description of how the Jeep came to rest in the ditch. It was during this conversation that Deputy Ruch noticed a strong odor of alcoholic beverages. Viewing the circumstances of the encounter, the trial court did not err in concluding that Regan was not "seized" without probable cause.

## III.

### Sufficiency of the Evidence

Regan contends that the evidence was insufficient to support his conviction. In reviewing the sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of the witnesses. Rather, we consider only the evidence most favorable to the State and any reasonable inferences to be drawn therefrom, to see if there is substantial evidence of probative value to support the verdict. *Fleming v. State* (1991), Ind., 579 N.E.2d 73, 74.

■ With regard to the charge of operating a vehicle while intoxicated, the record reveals that Regan admitted he was operating the Jeep. In addition, the evidence showed that Regan ran his Jeep off of the road; the Jeep contained empty beer cans, unopened beer cans behind the passenger's seat, and a half-full can of beer on the front seat; Regan had a very strong odor of alcoholic beverages about him; and Regan's blood alcohol level tested as .15. This evidence was sufficient to sustain his conviction for operating a vehicle while intoxicated. *Henriott v. State* (1990), Ind. App., 562 N.E.2d 1325.

■ Regan challenges the constitutionality of the presumption contained in Indiana Code 9–11–4–15, cited by the State.[1] Every statute is presumed to be constitutional and such a presumption continues until clearly overcome by a showing to the contrary. All doubts must be resolved in favor of constitutionality. *Miller v. State* (1987), Ind., 517 N.E.2d 64, 71. The same statute which Regan finds defective has withstood numerous constitutional challenges before this court. *Chilcutt v. State* (1989), Ind.App., 544 N.E.2d 856,

*transfer denied; Hall v. State* (1990), Ind. App., 560 N.E.2d 561; *Keyes v. State* (1990), Ind.App., 559 N.E.2d 1216. Thus, Regan's argument has no merit.[2]

■ With regard to the charge of operating a vehicle with .10% of alcohol in the blood, the record reveals that the Intoxilyzer 5000 and the operator were both properly certified, that proper procedures were followed in administering the test, that Regan admitted driving the Jeep, and that his blood alcohol content registered .15 subsequent to operating the vehicle. This evidence was sufficient to allow the jury to draw the inference that Regan operated his vehicle with a blood alcohol content in excess of .15. *Keyes, supra,* at 1218. Regan's argument that the trial court erred in denying a directed verdict on this count of the information is similarly without merit. The State presented evidence on each element of the offense. Finally, we would also note that Regan was not sentenced on this charge, operating a vehicle with .10% of alcohol in the blood; he was only sentenced on the OWI offense.

## IV.

### Constitutionality of IC 9–11–2–1

■ Regan contends that Indiana Code 9–11–2–1[3] is unconstitutional because a driver is unable to ascertain when he has crossed the line from a legal .09 to an illegal .10% blood alcohol. He cites no cases, merely referring us to Article 1, §§ 12 and 13 of the Indiana Constitution and the Fourteenth Amendment to the Federal Constitution. His argument fails for several reasons.

■ First, Regan raises this argument for the first time on appeal. The failure to

---

1. IC 9–11–4–15(b) (now codified as IC 9–30–6–15) provides:
   "If, in a prosecution for an offense under IC 9–11–2, evidence establishes that: (1) a chemical test was performed on a test sample taken from the person charged with the offense within the period of time allowed for testing under section 2 of this chapter; and (2) the person charged with the offense had at least ten-hundredths percent (0.10%) by weight of alcohol in the person's blood at the time the test sample was taken; the trier of fact shall presume that the

person charged with the offense had at least ten-hundredths percent (0.10%) by weight of alcohol in the person's blood at the time the person operated the vehicle. However, this presumption is rebuttable."

2. We address this issue further as it arises in the context of jury instructions in Part VI of this opinion, *infra.*

3. Recodified as IC 9–30–5–1.

file a proper motion to dismiss raising a constitutional challenge to a criminal statute waives the issue on appeal. *Payne v. State* (1985), Ind., 484 N.E.2d 16, 18. Second, Regan fails to support his argument with citation to any authority other than a citation to general constitutional provisions. *Douglas v. State* (1986), Ind., 490 N.E.2d 270, 271. Finally, our statute and similar statutes in other states have withstood a battery of constitutional challenges. *Finney v. State* (1986), Ind.App., 491 N.E.2d 1029, 1031–1032.

## V.

### *Exhibits*

Regan argues that the trial court erred in admitting State's Exhibits 1 through 7, arguing that a proper foundation was not laid for their admissibility and that the admission of those exhibits denied him his constitutional rights to confrontation and cross-examination. Exhibits 1 through 7 were offered by the State to verify the certification of Deputy Ruch and the Intoxilyzer 5000, to establish the testing procedures, to show that the procedures were followed in this instance, and to show the results of the Intoxilyzer test administered to Regan.

Indiana Code 9–11–4–5[4] authorizes the department of toxicology of the Indiana University School of Medicine to adopt rules regarding the certification of breath test operators, breath test equipment and chemicals, and techniques for administering a breath test. The statute also provides that certificates issued in accordance with rules adopted under the statute shall be sent to the clerk of the circuit court of the county in which the operator and equipment is located, and that certified copies of certificates are admissible in an OWI prosecution.

▮ Exhibit 1 consists of pages 1 and 9 of a certification of breath test operators, containing the name of Dennis F. Ruch of the Whitley County Sheriff's Department. It is signed by the Director of the State Department of Toxicology, bears a file

stamp of the Whitley County Clerk, and is certified to be a true copy of the document contained in her office. It was therefore properly admissible under Indiana Code 9–11–4–5(c)(1). *Hatch v. State* (1989), Ind. App., 547 N.E.2d 276, 278. Exhibit 2 is a similar exhibit regarding the certification of chemical test devices, and was likewise admissible. Exhibit 3 is a certificate of inspection which is in compliance with the standards of admissibility set out in the statute and rules. *Id.* Exhibits 4 and 5 are checklists for operation of the Intoxilyzer 5000 Test for Alcoholic Intoxication, one certified blank copy and one which was filled out by Deputy Ruch as he administered the test. The exhibits track the language of 260 IAC 1.1–4–4 and are both admissible under the statute. *Id.*

▮ Since the requirements of Indiana Code 9–11–4–5(d) were met (that the operator, equipment, chemicals and technique had all been approved in accordance with the regulations), Exhibit 6, which was the printout record of the test result, was also properly admitted. *Hatch, supra.*

▮ Exhibit 7 is a videotape of the testing procedure, in which Deputy Ruch receives Regan's informed consent, exhibits his certification as an Intoxilyzer operator, proceeds through the checklist for the Intoxilyzer 5000, administers the test, receives the results, and performs a number of other intoxication tests on Regan. This exhibit was admissible to aid the jury in understanding the Intoxilyzer test process and to allow them to ascertain that the proper procedures were followed. *Underwood v. State* (1989), Ind., 535 N.E.2d 507, 516, *cert. denied* 493 U.S. 900, 110 S.Ct. 257, 107 L.Ed.2d 206, *reh'g denied* 493 U.S. 985, 110 S.Ct. 524, 107 L.Ed.2d 524. During the trial, Deputy Ruch was available for cross-examination by Regan regarding Exhibits 1 through 7. Regan did not cross-examine Deputy Ruch.

▮ Regan finally argues that Indiana Code 9–11–4–5 is unconstitutional as it deprives him of his right to confrontation and

---

**4.** Recodified as IC 9–30–6–5.

cross-examination of the individuals who performed the tests certifying the equipment and Deputy Ruch. In addressing this issue, we reiterate our earlier observation that a statute is cloaked with a presumption of constitutionality. *Miller, supra.*

The scope of a defendant's confrontation rights under Article 1, § 13 of the Indiana Constitution was recently addressed by our supreme court in *Brady v. State* (1991), Ind., 575 N.E.2d 981 (3–2, Givan and Krahulik, JJ., dissenting). While strictly adhering to the face-to-face requirement contained therein, the majority noted that the right is not absolute; some exceptions to the hearsay exclusionary rule are consistent with this constitutional provision. *Id.* at 987–988. In particular, the majority identified the official records exception of Indiana Trial Rule 44 in the context of habitual offender sentencing. *Id.* at 988. The court cited *Wilson v. State* (1987), Ind., 513 N.E.2d 653, in which an identical argument was made regarding the admissibility of certified documents in habitual offender sentencing proceedings. The *Wilson* court concluded that Trial Rule 44 violated neither the State nor Federal Constitutions.

Indiana Code 9–11–4–5 serves a similar purpose to Trial Rule 44, permitting properly certified records kept by public officials to be admitted in court without requiring the preparer or custodian to be present to introduce the documents and personally vouch for their reliability. Thus, both preclude the criminal defendant from cross-examining the certifying official at trial. The statute and the rule share identical indicia of reliability—the duty of the public custodian to maintain accurate records. Regan identifies no reason why the statute and the rule should be treated differently. Accordingly, we hold that Article 1, § 13 of Indiana's Constitution is not offended by Indiana Code 9–11–4–5.

██ Nor is Indiana Code 9–11–4–5 repugnant to the Sixth Amendment of the Federal Constitution, made applicable to the States by the Fourteenth Amendment. In *U.S. v. Aikins* (9th Cir.1990), 946 F.2d 608, the court was faced with a similar argument. The court stated:

Evidence in the form of a certificate of an officer of the government with authority to issue the certificate is an old and well-established exception to the general prohibition against hearsay. The certificate of a governmental official is a particular case of the admissibility of a public document. The general reason for the exception is the probable trustworthiness of the public officer's statement and the great inconvenience that would be caused to public business if public officers had to be called to court to verify in person every fact they certify. *See Wigmore on Evidence*, §§ 1631–32 (Chadbourn rev. 1974). Thousands of statutes permit certification of facts by public officials. *Id.* § 1676. The certificate of a notary is, for example, a common instance. *Id.* § 1675. No one supposes that the Confrontation Clause is violated if the notary does not appear.

*Aikins, supra,* at 614. *See also Ohio v. Roberts* (1980), 448 U.S. 56, 66 n. 8, 100 S.Ct. 2531, 2539 n. 8, 65 L.Ed.2d 597.

We conclude that Indiana Code 9–11–4–5 is constitutional and that the trial court did not err in admitting State's Exhibits 1 through 7.

## VI.

### *State's Instructions*

██ Regan argues that the trial court erred in giving two of the State's instructions. Jury instructions are largely discretionary with the court. *Jewell v. State* (1989), Ind., 539 N.E.2d 959, 961. Error in one instruction will not justify reversal unless the error is of such a nature that the whole charge of which it forms a part misleads the jury as to the law of the case. *Id.* at 961–962.

██ Regan challenges instruction 12 and instruction 17. Final instruction 12 states:

"Prima facie evidence of intoxication" includes evidence that at the time of an alleged violation there was ten-hun-

dredths percent (.10%), or more by weight of alcohol in the person's blood. Record, p. 146, 343. Instruction 17 states:

If the evidence establishes that:

(1) A chemical test was performed on a test sample taken from the person charged with the offense within the period of time allowed for testing under section 2 of this chapter; and

(2) The person charged with the offense had at least ten-hundredths percent (0.10%) by weight of alcohol in the person's blood at the time the person operated the vehicle. However, this presumption is rebuttable.

Record, p. 151, 344–345. Regan argues that the instructions are mandatory and therefore erroneous, as the instructions did not state that the presumption or "prima facie evidence" characterization was not binding upon the jury.[5] He cites *Sturgeon v. State* (1991), Ind.App., 575 N.E.2d 679.

In *Sturgeon*, as here, the defendant was convicted of OWI, and challenged a jury instruction regarding BAC evidence. The court noted that the constitutional principle requiring the State to prove each element of a crime beyond a reasonable doubt prevents the use of evidentiary presumptions in a jury charge that have the effect of relieving the State of its burden of proof of each essential element of a crime. *Id.* at 680.

The challenged instruction in *Sturgeon* was nearly identical in language to instructions 12 and 17 set out above, with two exceptions. First, the instruction defined "prima facie evidence" as "evidence which is sufficient to establish a given fact, and will remain sufficient if uncontradicted." Second, the instruction did not state that the presumption of blood alcohol level while operating the vehicle was rebuttable. The court found that the instruction "requir[ed] the jury to find both the presumed

fact, BAC level at the time of operation, *and the element of intoxication* from proof of BAC level at the time of testing." *Id.* at 681 (emphasis in original). This defect mandated reversal.

Here, the charge as a whole does not exhibit the same deficiencies. In addition to instructions 12 and 17 above, the jury also received instructions 13, 16, 18, and 19. Instruction 13 provides:

An intoxilyzer test result, in an [sic] of itself, is not sufficient evidence upon which you may return a verdict of guilty against the Defendant as to Operating a Motor Vehicle While Intoxicated.

Record, pp. 147, 344. Similarly, instruction 16 states:

Proof of a blood alcohol content of .10%, or more, is not sufficient, in and of itself to establish that the Defendant was "intoxicated" for purposes of the crime of Driving While Intoxicated, a Class A Misdemeanor.

Record, pp. 150, 344. Instructions 18 and 19 state:

I have explained Prima Facie evidence is rebuttable and I have explained that other evidence is rebuttable. This means that such evidence, Prima Facie evidence or a presumption are "disputable".

If you find from the evidence that Prima Facie evidence has been explained, contradicted or disproved, you may disregard such evidence. Such evidence may either be direct or circumstantial which explains, counteracts or disproves such Prima Facie evidence or presumption may provide a reasonable doubt as to whether or not the State of Indiana has proven a given fact as it relates to a material element of the crime.

The State of Indiana has the burden of proving beyond a reasonable doubt that the defendant is guilty of the charges in

---

5. Regan also argues that instructing the jury with regard to Intoxilyzer testing was error because there was no showing that the procedures were admissible under the test articulated in *Frye v. U.S.* (D.C.Cir.1923), 293 F. 1013. His argument has no merit. The *Frye* test is used in assessing the reliability of "novel scientific evidence." *Hopkins v. State* (1991), Ind., 579

N.E.2d 1297, 1301. Far from novel, blood alcohol testing is a part of the everyday routine of law enforcement. Indeed, the statutory provisions for its admissibility demonstrate that blood alcohol testing is one of those procedures "where a legislative determination has obviated the need for a *Frye* determination." *Id.* at 1303.

the informations. This burden never shifts from the State to the defendant.

The defendant comes into this Court presumed to be innocent of the crimes charged against him and this presumption follows him through every step of this trial unless that presumption is overcome by sufficient evidence to convince you of his guilt beyond a reasonable doubt.

The defendant is not required to prove himself innocent or to establish any fact that would entitle him to an acquittal. Record, pp. 152–153, 345.

Viewing the charge as a whole, as we are required to do, we are not convinced that the jury was misled to believe Regan had an obligation to come forward with evidence to rebut the BAC evidence. On the contrary, the instructions clearly stated that the State retains the burden of proof of guilt beyond a reasonable doubt throughout the trial and that Regan was not required to prove his innocence or establish any fact entitling him to acquittal. Moreover, the trial court explicitly instructed the jury (twice) that it could not find Regan guilty of OWI based upon BAC evidence alone. The instruction that the presumption was "disputable" informed the jury that it was free to accept or reject the presumption, as it saw fit.[6] The jury was instructed that it was to consider the instructions as a whole and to construe them in harmony with each other. Thus, this case is readily distinguishable from *Sturgeon*, in that the effect of the challenged instructions, when viewed in context of the charge as a whole, was not to impose a mandatory presumption. *See Darby v. State* (1987), Ind., 514 N.E.2d 1049, 1055–1056.

## VII.

### Refusal of Tendered Instructions

■ Regan finally contends that the trial court erred in refusing to give his tendered instructions 4 and 5. In considering whether any error results from refusal of a tendered instruction, we consider 1) whether the tendered instruction correctly states the law, 2) whether there is evidence in the record to support giving the instruction, and 3) whether the substance of the instruction is covered by other instructions which are given. *Evans v. State* (1991), Ind., 571 N.E.2d 1231.

■ Defendant's Instruction 4 states:

In order to convict the Defendant of either of the crime [sic] as alleged, you must find that each of the elements have been proven by the evidence, beyond a reasonable doubt, including that the Defendant "operated a vehicle", and if you do not find from the evidence that the Defendant operated a vehicle, beyond a reasonable doubt, then you must find the Defendant not guilty.

The State has the obligation to prove, by the evidence, beyond a reasonable doubt, that the Defendant was operating the vehicle at the time and place in question.

Record, p. 94. The substance of this instruction was covered by the instructions defining the crimes charged, the instruction which stated that the State has the obligation to prove that Regan committed the crimes charged beyond a reasonable doubt, and instruction 14, which stated, "The State has the burden of proving, beyond a reasonable doubt, that the Defendant was operating a motor vehicle and that during such operation of the motor vehicle, he was intoxicated." Record, pp. 148, 344. Moreover, in focusing on one element of the crime, the tendered instruction comes dangerously close to an impermissible comment on the evidence. *Worthington v. State* (1980), Ind.App., 409 N.E.2d 1261, 1272, *reh'g denied.* The trial court did not err in refusing Regan's tendered instruction 4.

■ Defendant's Instruction 5 states:

---

6. Stated otherwise, the "presumption" was described in a manner which "require[d] the State to convince the jury that the suggested conclusion should be inferred based on the predicate facts proved." *Francis v. Franklin* (1985), 471 U.S. 307, 314, 105 S.Ct. 1965, 1971, 85 L.Ed.2d 344.

The mere fact that a person may have consumed alcoholic beverages does not necessarily mean that he has a blood alcohol content of ten-hundreds [sic] percent (.10%), or more, by weight of alcohol in his blood. The circumstances and the effect of such consumption by a person must be considered by you when reaching your verdict.

Whether the Defendant's blood alcohol content was ten-hundreds [sic] percent (.10%), or more, by weight of alcohol in his blood, must be proven by the State of Indiana, and the State of Indiana must prove that such was the blood alcohol content of the Defendant at a time when he was operating a motor vehicle.

Record, p. 95. This instruction was misleading, as the jury could have understood it to mean that the State was required to prove Regan operated his vehicle with a BAC of .10% in order to convict him of OWI.[7] The State need only prove that the defendant was impaired while driving in order to gain a conviction for OWI. *Spaulding v. State* (1989), Ind.App., 533 N.E.2d 597, 602, *transfer denied.* The trial court correctly refused Regan's tendered instruction.

Affirmed.

GARRARD and SHARPNACK, JJ., concur.

---

**7.** The instruction does not specify that it applies only to the offense of operating a vehicle with a BAC of .10% or greater.