**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



**FILED**

Nov 03 2014, 10:12 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**DONALD E.C. LEICHT**
Kokomo, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MONIKA PREKOPA TALBOT**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JADE M. COOK, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 34A02-1403-CR-198 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE HOWARD SUPERIOR COURT
The Honorable William C. Menges, Jr., Judge
Cause No. 34D01-1302-FB-157

**November 3, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Jade M. Cook appeals his conviction for possession of paraphernalia as a class A misdemeanor, as well as his sentence for a conviction of visiting a common nuisance, a class B misdemeanor. Cook raises three issues, which we revise and restate as:

I. Whether the evidence is sufficient to sustain his conviction for possession of paraphernalia as a class A misdemeanor; and

II. Whether the court erred in sentencing him on his conviction of visiting a common nuisance, a class B misdemeanor.[1]

We affirm.

## FACTS AND PROCEDURAL HISTORY

On February 22, 2013, Howard County Sheriff's Department Deputies Todd Prifogle and Justin Markley were on duty in Kokomo, Indiana, where they visited a home to serve an arrest warrant on Billy Bess. As Deputy Markley approached the home, he

---

[1] In his brief, Cook's statement of the issues is as follows: "The issues presented for appellate review are whether the State met its burden of proof on Count 3 and whether the sentences imposed by the Trial Court were inappropriate." Appellant's Brief at 1. In his argument section, which does not contain headings delineating different issues, Cook appears to also raise the issue of whether the court abused its discretion in instructing the jury. Specifically, Cook argues that "[t]he Trial Court should have related the State's burden of proof to the facts alleged in Count 3 (Final Instruction No. 3) under the relevant statute, and not related the State's burden to the generic statute. (Final Instruction No. 7)." Id. at 5. However, Cook then asserts as follows:

> Trial counsel did not object to the Trail [sic] Court's Final Instructions; however, Cook's argument here is not anchored in the Final Instructions, objected to or not.
>
> Cook's argument is anchored in his Constitutional right enunciated in Sturgeon v. State, requiring that the State prove "beyond a reasonable doubt… every fact necessary to constitute the crime with which he is charged." Sturgeon[ v. State, 575 N.E.2d 679, 679 (Ind. Ct. App. 1991)].
>
> The State did not meet its burden. His conviction thereunder should be reverse [sic].

Id. To the extent that Cook attempts to raise an issue regarding the final jury instructions, we find that he has waived the issue for lack of cogent argument. See, e.g., Cooper v. State, 854 N.E.2d 831, 834 n.1 (Ind. 2006) (holding that the defendant's contention was waived because it was "supported neither by cogent argument nor citation to authority"); Shane v. State, 716 N.E.2d 391, 398 n.3 (Ind. 1999) (holding that the defendant waived argument on appeal by failing to develop a cogent argument).

could smell a "strange odor" emanating from the garage attached to the home. Transcript at 296. The deputies knocked at the door, and a woman named Lorrie Riche, who lived at the home with Bess, answered and informed them that Bess was not present. Riche allowed the deputies to enter the home to look for Bess. Once inside, another resident named Richard Berg approached the deputies and began shouting for Bess. Bess, who had been in the attached garage, entered the home through a door that led to the garage.

When Bess opened the door to the garage, Deputies Prifogle and Markley observed Cook standing in the garage behind Bess. The garage was filled with smoke and contained two bottles filled with bubbling liquid, and the bottles, smoke, and smell of the room indicated to the deputies that the garage was being used to manufacture methamphetamine. The deputies placed Bess and Cook under arrest. Upon Cook's arrest, Deputy Markley searched him and recovered a set of digital scales in his pocket.

In the garage, police found several other items consistent with the manufacture and use of methamphetamine, including: hypodermic needles, spoons, straws, a glass pipe, hydrochloric acid generators, Coleman fuel containing ammonia, coffee filters, glass jars, salt, funnels, cold packs containing ammonium nitrate, bottles of lye, pliers, a coffee grinder, rubber tubing, lithium batteries, ziplock bags, and empty pseudoephedrine boxes and blister packs. A field test performed on the straws found at the scene tested positive for methamphetamine. One liquid sample taken from bottles at the scene tested positive for methamphetamine.

On March 1, 2013, the State charged Cook with Count I, dealing in methamphetamine as a class B felony; Count II, possession of chemical reagents or

3

precursors with intent to manufacture a controlled substance as a class D felony; Count III, possession of paraphernalia as a class A misdemeanor; and Count IV, visiting a common nuisance, a class B misdemeanor. On August 20, 2013, the State filed a motion to consolidate, on September 9, 2013, the court held a hearing on the State's motion, and the court ordered Cook's trial be consolidated with Bess's trial. On October 23, 2013, Bess by counsel filed a plea agreement with the court, and on November 20, 2013, Bess pled guilty to dealing in methamphetamine as a class B felony.

On February 21, 2014, the court commenced a jury trial in which evidence consistent with the foregoing was presented. At trial, the State called Kokomo Police Officer Derek Root, who assisted the Howard County Sheriff's Department in the investigation and specifically took photographs of the scene. During Officer Root's testimony, the State presented and the court admitted into evidence State's Exhibit 18, a photograph which depicted, among other things, hypodermic needles, which Officer Root testified were recovered from the drawer of a dresser located in the garage. The State also presented and the court admitted two other photographs depicting hypodermic needles as State's Exhibits 19 and 20, and Officer Root testified that such needles were recovered from the garage but could not "one hundred percent guarantee they were in the dresser at the time [they] collected them." Id. at 133.

Cook testified that he was not at Bess's residence to manufacture methamphetamine but "went over there to get high and get some drugs, to get meth." Id. at 317-318. He testified that he "wasn't there more than 15 minutes" before the police arrived on the scene. Id. at 319. He stated that when he arrived, he and Bess went to a

4

bedroom and "got high" when Bess "pulled out a meth pipe and some meth and loaded the pipe and [they] proceeded to smoke meth . . . ." Id. at 320. Cook also indicated that he did not attempt to hide anything in the garage. Bess testified that he and Cook smoked methamphetamine in the bedroom before the police arrived.

On February 26, 2014, the jury found Cook guilty of possession of paraphernalia and visiting a common nuisance and not guilty of dealing in methamphetamine and possession of chemical reagents or precursors with intent to manufacture a controlled substance. After dismissing the jury, the court proceeded to sentencing, noting that Cook "has 738 days of credit time and a maximum sentence of 548 days or so . . . ." Id. at 411. The court sentenced Cook to 365 days for Count III, possession of paraphernalia as a class A misdemeanor, and 183 days for Count IV, visiting a common nuisance as a class B misdemeanor, and ordered that the sentences be served consecutively. Cook was then released on his own recognizance.

I.

The first issue is whether the evidence is sufficient to sustain Cook's conviction for possession of paraphernalia as a class A misdemeanor. When reviewing claims of insufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses. Jordan v. State, 656 N.E.2d 816, 817 (Ind. 1995), reh'g denied. Rather, we look to the evidence and the reasonable inferences therefrom that support the verdict. Id. We will affirm the conviction if there exists evidence of probative value from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. Id.

The offense of possession of paraphernalia as a class A misdemeanor is governed by Ind. Code § 35-48-4-8.3(a) which, at the time of Cook's offense, provided that:

>  (a)   A person who possesses a raw material, an instrument, a device, or other object that the person intends to use for:
>
>  >  (1)   introducing into the person's body a controlled substance; . . .
>  >
>  >  in violation of this chapter commits a Class A infraction for possessing paraphernalia
>
>  (b)   A person who knowingly or intentionally violates subsection (a) commits a Class A misdemeanor. . . .

(Subsequently amended by Pub. L. No. 158-2013, § 635 (eff. July 1, 2014)). The State alleged in its charging information that Cook "did knowingly or intentionally possess . . . . hypodermic needles; that [Cook] intended to use for introducing into [his] body a controlled substance, to-wit: methamphetamine . . . ." Appellant's Appendix at 17. Thus, in order to convict Cook of possession of paraphernalia as a class A misdemeanor, the State was required to prove that Cook knowingly or intentionally possessed hypodermic needles that he intended to use for introducing methamphetamine into his body.

A conviction for possession of contraband may rest upon either actual possession or constructive possession. Goodner v. State, 685 N.E.2d 1058, 1061 (Ind. 1997). Actual possession occurs when a person has direct physical control over the item. Gee v. State, 810 N.E.2d 338, 340 (Ind. 2004). To show constructive possession, the State must show that the defendant had both (1) the intent to maintain dominion and control, and (2) the capability to maintain dominion and control over the contraband. Goliday v. State, 708

6

N.E.2d 4, 6 (Ind. 1999). Control in this sense concerns the defendant's relation to the place where the substance is found: whether the defendant has the power, by way of legal authority or in a practical sense, to control the place where, or the item in which, the substance is found. Jones v. State, 807 N.E.2d 58, 65 (Ind. Ct. App. 2004), trans. denied. The intent element of constructive possession is shown if the State demonstrates the defendant's knowledge of the presence of the contraband. Goliday, 708 N.E.2d at 6. "This knowledge may be inferred from either the exclusive dominion and control over the premise containing the contraband or, if the control is non-exclusive, evidence of additional circumstances pointing to the defendant's knowledge of the presence of the contraband." Henderson v. State, 715 N.E.2d 833, 835-836 (Ind. 1999). Those additional circumstances include: (1) incriminating statements by the defendant; (2) attempted flight or furtive gestures; (3) a drug manufacturing setting; (4) proximity of the defendant to the drugs; (5) drugs in plain view; and (6) location of the drugs in close proximity to items owned by the defendant. Jones, 807 N.E.2d at 65.

Cook argues that "[t]here is no 'probative evidence' in the Record that [he] possessed 'hypodermic needles', let alone with the intent to use them 'for introducing into (his) body . . . methamphetamines' as charged in Count 3. None." Appellant's Brief at 3-4 (citation omitted). He argues that "the evidence is to the contrary" because Cook "admitted going to a common nuisance to get high smoking meth." Id. at 4.

The State argues that it proved Cook constructively possessed the hypodermic needles using the additional circumstances expressed in Jones. It notes that Cook made incriminating statements when he testified that he was in Bess's home "to get high and

get some drugs, to get meth" and that he admitted to smoking methamphetamine. Appellee's Brief at 7-8. The State argues that Cook "placed himself in a drug manufacturing setting." Id. at 8. The State also asserts that Cook "was in close proximity to the paraphernalia" which "could allow the jury to rationally infer [his] knowledge of and ability to control the needles." Id. at 8-9. The State further posits that, based upon such circumstances, the "jury could rationally determine that [Cook] was, at the least, aware of a high probability that he was in possession of paraphernalia" sufficient to prove knowing or intentional constructive possession of the needles. Id. at 9. The State argues that it presented sufficient evidence that Cook intended to introduce methamphetamine into his body using the needles because Cook admitted that he went to Bess's residence to "get high" and "get meth" and that although he stated that he smoked methamphetamine, "the jury was under no obligation to believe [his] testimony and, considering [his] close proximity to the hypodermic needles, had sufficient evidence to infer that [he] intended to inject the drug." Id. at 10.

Our review of the record reveals that the State met its burden of proof on this issue. It is undisputed that Cook did not have exclusive control of the premises, and accordingly we may examine the additional circumstances listed above in determining whether evidence was presented from which the jury could infer that Cook had knowledge of the presence of the hypodermic needles. Cook was found in the garage which contained a working methamphetamine laboratory, and the needles were found in the garage. Also, to the extent that the list of additional circumstances is not an exhaustive list, we note that the jury heard evidence including that a set of digital scales

was found on Cook's person upon his arrest and that he admitted at trial that he was high on methamphetamine at the time he was arrested and had visited Bess's residence in order to obtain the drug. Accordingly, we find that the jury could have inferred that Cook knew about and could exercise control over the needles.

Cook also claims that the State failed to prove he intended to use the needles to introduce methamphetamine into his body. Intent is a mental state that the trier of fact often must infer from the surrounding circumstances. Vasquez v. State, 741 N.E.2d 1214, 1217 (Ind. 2001). Again, Cook was discovered in a garage housing a methamphetamine lab, and, at trial, Cook admitted that he went to Bess's residence to "get high" and "get meth," Transcript at 317-318. As the State asserts, although Cook stated that he smoked methamphetamine, the jury was under no obligation to believe his testimony and there was sufficient evidence to infer that he intended to inject the drug.

Based on the evidence, we conclude that the State presented evidence of a probative nature from which a reasonable jury could find Cook guilty of possession of paraphernalia as a class A misdemeanor. See, e.g., Deshazier v. State, 877 N.E.2d 200, 208 (Ind. Ct. App. 2007) (holding that, based on the totality of the circumstances, the evidence was sufficient to support defendant's conviction based on a theory that he constructively possessed the handgun while seated in the vehicle, whether or not he actually transported the gun in the vehicle and even though there was a passenger in the front passenger seat of the vehicle), trans. denied.

9

## II.

The next issue is whether the court erred in sentencing Cook to "a period of 183 days" executed for his conviction of visiting a common nuisance as a class B misdemeanor. Appellant's Appendix at 37. As the State points out, however, Cook has already completed serving this sentence. Indeed, as noted above, Cook was incarcerated during the pendency of his jury trial which included a charge of dealing in methamphetamine as a class B felony, and he accumulated credit time in excess of the maximum sentence stemming from his two eventual convictions. The court sentenced him immediately following the jury's verdicts on the four charges against him, and he was released on his own recognizance. It is well settled that once a criminal defendant serves his sentence, "the issue of the validity of the sentence is rendered moot." Irwin v. State, 744 N.E.2d 565, 568 (Ind. Ct. App. 2001) (quoting Richardson v. State, 402 N.E.2d 1012, 1013 (Ind. Ct. App. 1980)); see also Bell v. State, 1 N.E.3d 190, 192 (Ind. Ct. App. 2013) (noting that "where the principal questions at issue cease to be of real controversy between the parties, the errors assigned become moot questions and this court will not retain jurisdiction to decide them. Stated differently, when we are unable to provide effective relief upon an issue, the issue is deemed moot, and we will not reverse the trial court's determination where absolutely no change in the status quo will result"). As such, Cook's appeal of this issue is moot.

CONCLUSION

For the foregoing reasons, we affirm Cook's conviction for possession of paraphernalia as a class A misdemeanor, as well as his sentence for a conviction of visiting a common nuisance, a class B misdemeanor.

Affirmed.

BARNES, J., and BRADFORD, J., concur.